COLUMBUS STATE BANK, RESPONDENT, *v.* ERB ET AL., DEFENDANTS; ANDERSON ET AL., APPELLANTS.

(No. 3,488.)

(Submitted February 15, 1915. Decided March 29, 1915.)

[147 Pac. 617.]

*Promissory Notes—Impairing Mortgage Security—Estoppel— Appeal and Error—Theory of Case—Evidence—Market Value.*

Appeal and Error—Theory of Case.
   1.   Where a party permits, without objection, the trial of a cause to proceed upon a certain theory, he may not, on appeal, assert that a different theory should have been adopted.

Evidence—Hearsay.
   2.   A copy of a copy of items of sales of livestock, made in a pocket memorandum-book which, as well as the first copy, had been lost, was hearsay and properly excluded.

Same—Market Value.
   3.   While the original cost price of an article, as well as the amount it brought at sheriff's sale, is some evidence of its market value, neither is conclusive.

Same.
   4.   Where no evidence was introduced on the question of the reasonable market value of machinery, either at the time plaintiff obtained it from the buyer or at the time it was sold, the original cost of which was $1,300 and which was sold at sheriff's sale for $330, neither the referee nor the court in adopting his finding was guilty of abuse of discretion in fixing its value at the latter sum.

Promissory Notes—Impairing Mortgage Security—Estoppel.
   5.   Where indorsers on a note knew of, and impliedly gave their assent to, sales of livestock mortgaged to secure it, they were estopped to insist that the mortgagee, by permitting the mortgagor to make the sales, had impaired the mortgage security and that they had been injured by the mortgagor's mismanagement and misappropriation of the proceeds.

*Appeal from District Court, Yellowstone County; Geo. W. Pierson, Judge.*

ACTION by the Columbus State Bank against Guy D. Erb and others. From a judgment for plaintiff and an order denying them a new trial, certain of the defendants appeal. *Affirmed.*

*Messrs. Johnston & Coleman,* for Appellants, submitted a brief; *Mr. Wm. Johnston* argued the cause orally.

The authorities are agreed on the question as to the admissibility of a correct copy of a lost record which would have been

admissible if not lost.   Elliott on Evidence, section 470, states the rule as follows: "Copies or transcripts taken from a party's books of original entry are admissible on proof of the loss or destruction of the books."   (17 Cyc. 518e; 3 Ency. of Evidence, 542, 543; *Baldridge* v. *Penland,* 68 Tex. 441, 4 S. W. 565.) "Where the books of original entry have been destroyed by fire, the balance claimed to be due on an account may be shown by a ledger in which such balance was entered by a clerk who is beyond the jurisdiction of the court and whose residence is unknown to plaintiff."   (*Rigby* v. *Logan,* 45 S. C. 651, 24 S. E. 56; *McDonnell* v. *Ford,* 87 Mich. 198, 49 N. W. 545; *McCrady* v. *Jones,* 36 S. C. 136, 15 S. E. 430; *Stephan* v. *Metzger,* 95 Mo. App. 609, 69 S. W. 625; *South Omaha* v. *Wrzesinski,* 66 Neb. 790, 92 N. W. 1045; *Manchester Assur. Co.* v. *Oregon Ry. Co.,* 46 Or. 162, 114 Am. St. Rep. 863, 69 L. R. A. 475, 79 Pac. 60; *State* v. *City of Pierre,* 15 S. D. 559, 90 N. W. 1047; *Cowan* v. *Hatcher* (Tenn.); 48 S. W. 328.)   It is even held with great uniformity a copy of a lost copy of the lost record is admissible in evidence.   (Elliott on Evidence, sec. 1483; *Winn* v. *Patterson,* 9 Pet. (U. S.) 663–677, 9 L. Ed. 266; *Kelly* v. *Cargill Elevator Co.,* 7 N. D. 343, 75 N. W. 264; *Joslyn* v. *Pulver,* 59 Hun, 129, 13 N. Y. Supp. 311; *Smith* v. *Lindsey,* 89 Mo. 76, 1 S. W. 88; *Chambers* v. *Haney,* 45 La. Ann. 447, 12 South. 621; *Hamer* v. *State,* 60 Tex. Cr. 341, 131 S. W. 813; *Nash* v. *Williams* (*Cornett* v. *Williams*), 20 Wall. (U. S.) 226, 22 L. Ed. 254; *New York N. H. & H. R. Co.* v. *Horgan,* 26 R. I. 448, 59 Atl. 310; *Mansfield* v. *Johnson,* 51 Fla. 239, 120 Am. St. Rep. 159, 40 South. 196; 17 Cyc. 517; Wigmore on Evidence, 1275 (c).)

Where a creditor is secured by a chattel mortgage and by sureties on the same debt, any act of the creditor which tends to lessen the value of the security operates to release the sureties to that extent.   So if the act of the respondent in retaining the shearing plant for eighteen months before sale tended to lessen the value of the plant, the sureties should be released to that extent.   (7 Cyc. 81; *Miller* v. *McElwain,* 52 Kan. 91, 34 Pac. 396; *Murray* v. *Loushman,* 47 Neb. 256, 66 N. W. 413; *Howery*

v. *Hoover*, 97 Iowa, 581, 66 N. W. 772; *Nichols-Shepard & Co.*
v. *Burch*, 128 Ind. 324, 27 N. E. 737; *New England Mut. Life
Ins. Co.* v. *Randall*, 42 La. Ann. 260, 7 South. 679; *Barrett* v.
*Bass*, 105 Ga. 421, 31 S. E. 435.)

The respondent bank is liable for the proceeds derived from
the sale of the mortgaged property which were paid into the
bank, and the sureties on the note secured by the mortgage in
question are entitled to credit for all such proceeds. Under
the authorities it was immaterial whether the sureties requested
the bank to so apply said proceeds. The law imposed this duty
upon the bank without waiting for any request from the sureties.
(*Montgomery* v. *Martin*, 94 Ga. 219, 21 S. E. 513; *Eppinger* v.
*Kendrick*, 114 Cal. 620, 46 Pac. 613; *De Goey* v. *Van Wyk*, 97
Iowa, 491, 66 N. W. 787; *Keel* v. *Levy*, 19 Or. 450, 24 Pac. 253;
*Embree* v. *Strickland*, 1 White & W. Civil Cas. Ct. App. (Tex.)
1299; *Kuhns* v. *Westmoreland Bank*, 2 Watts (Pa.), 136; *Holliday* v. *Brown*, 33 Neb. 657, 50 N. W. 1042; *Mellendy* v. *Austin*,
69 Ill. 15; 32 Cyc. 221.)

*Mr. M. Brown* and *Messrs. Nichols & Wilson*, for Respondent,
submitted a brief; *Mr. C. W. Nichols* argued the cause orally.

Hearsay evidence may be written as well as oral. It is that
evidence which does not derive its value solely from the credit
to be given to the witness himself, but rests also in part on the
veracity and competency of some other person. It is uniformly
held incompetent. (Elliott on Evidence, 314; 5 Greenleaf on
Evidence, 99; *Hopt* v. *Utah*, 110 U. S. 574, 28 L. Ed. 262, 4 Sup.
Ct. Rep. 202.) It is not admissible to corroborate other testimony. (Elliott on Evidence, 316.) Exhibit ''X'' is not a
memorandum made by a party having personal knowledge, and
who therefore would not be a competent witness to the fact. It
is not a correct copy of a memorandum so made. It is an independent creation by two people from oral statements and
memoranda. Erb was a witness for these defendants. Its use
was not for the purpose of contradiction, but partly to corroborate and partly as original evidence of the fact. It does not fall

within a single recognized exception to the rule permitting hearsay.

Memorandum-books, even when made by the party who had personal knowledge of the fact, are not admissible, under the exception of entries in books. (Elliott on Evidence, 459; *In re Fulton Estate,* 178 Pa. 78, 35 L. R. A. 133, 35 Atl. 880; *Richardson* v. *Emery,* 23 N. H. 220; *Gregory* v. *Jones,* 101 Mo. App. 270, 73 S. W. 899; *Security Co.* v. *Graybeal,* 85 Iowa, 543, 39 Am. St. Rep. 311, 52 N. W. 497; *Simons* v. *Steele,* 82 App. Div. 202, 81 N. Y. Supp. 737; *Rankin* v. *Fidelity etc. Co.,* 189 U. S. 242, 47 L. Ed. 792, 23 Sup. Ct. Rep. 553; *Costelo* v. *Crowell,* 139 Mass. 588, 2 N. E. 698.)

In the case of *Eppinger* v. *Kendrick,* 114 Cal. 620, 46 Pac. 613, cited by appellants, the surety claimed that Farham, the payer of the note, had deposited grain and had directed the application of the proceeds on the note. It was held that if this was true, and that the payee without the sureties' consent had applied it otherwise, there would be a release. In the instant case no direction had been given by 'Erb. The indorsers knew and assented to other uses of this money. The cases are totally unlike in the essential facts which are necessary to effect a release of the surety.

In the Iowa case, *De Goey* v. *Van Wyk,* 97 Iowa, 491, 66 N. W. 787, the court construes the instruction and holds that it means that if plaintiff (the creditor) took any of the mortgaged property and disposed of it' or appropriated it to his own use, and did not apply it to the discharge of the debts which the mortgage secured, the security would be released. That this is the law, when the security is reduced to the possession or control of the creditor, is conceded; but in the case now being determined, the bank never had the custody or control of the chattel property. An examination of the case of *Farmers' Bank* v. *Arthur,* 75 Iowa, 129, 39 N. W. 228, will disclose that such is the rule, and the court further holds that the creditor is under no duty to show what had become of it or to do anything to

preserve it.    This is supported by *Hunt* v. *Purdy*, 82 N. Y. 486, 37 Am. Rep. 587; *Wasson* v. *Hodshire*, 108 Ind. 26, 8 N. E. 621.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought to recover judgment for the sum of $5,000 alleged to be due upon a negotiable promissory note executed to the plaintiff by defendant Erb and indorsed for value by the defendants Raiff and Anderson, on December 1, 1906, and due and payable eight months thereafter, with interest at the rate of one per cent per month, payable semi-annually.    It is alleged that no part of the principal sum or interest has been paid, except the sum of $212.72 paid on September 19, 1907, and $108 paid on July 31, 1908.    The defendants Raiff and Anderson filed a separate answer, in which they deny that they indorsed the note for value, and allege the following as an affirmative defense: That at the time the note was executed by Erb and indorsed by them Erb was a customer of the plaintiff; that it was then supplying him with money to purchase sheep in large numbers; that these defendants were the owners of sheep consisting of wethers and bucks, and a shearing plant which Erb desired to purchase from them, at an agreed price of $13,103, but did not have a sufficient amount of money to make payment, having then on deposit with plaintiff only about $700; that the officers of the plaintiff, in order to assist Erb, agreed to lend him the necessary sum, on condition that he would execute to it a chattel mortgage on all of the sheep, together with the wool produced by them during the existence of the mortgage, and also the shearing plant; that it was expressly agreed by the plaintiff, Erb, and these defendants that the mortgage should be made to secure the full amount of the purchase price so advanced by the plaintiff, and that the money then on deposit to the credit of Erb should be used in caring for the sheep; that Erb thereupon executed the mortgage to secure payment of the loan, it being evidenced by three promissory notes, two for $5,000 each, and a third for $3,103, all of

the same date and tenor, except the principal sum named in the last, the defendants indorsing them all in blank; that the note upon which this action is based is one of these notes, the others having been paid; that it was agreed that, if Erb defaulted in the payment of the notes, the mortgaged property should be sold, and the proceeds applied to the discharge of them; that under the agreement and the rule of law applicable it became the duty of plaintiff first to exhaust this security before taking recourse against these defendants upon their contingent liability; that the mortgage was never foreclosed; that plaintiff permitted Erb to sell the greater portion of the sheep, realizing various sums of money, which he paid to the plaintiff, but which it failed to apply to the discharge of the notes, though it was its duty to do so. These sums are set out in detail in the answer, and include the sum of $2,200, the price obtained from the wool shorn from the sheep during the summer of 1907. It is alleged that plaintiff took possession of 315 head of sheep covered by the mortgage, of the value of $945, and converted them to its own use, and that it also took possession of the shearing plant, which was of the value of $1,400, and now claims to be the owner of it. The sums so paid to the plaintiff and the property delivered to it by Erb, it is alleged, were sufficient to discharge all of the indebtedness evidenced by the notes. It is alleged, that at various times prior to the bringing of this action these defendants requested the plaintiff to make an accounting for the amounts paid to it by Erb, and that it apply them to a discharge of the notes, signifying their readiness to pay any balance which might be found to remain unpaid, but that plaintiff wholly failed to render such accounting, claiming that these defendants were not entitled to have such application made. It is further alleged that, by reason of the premises, these defendants are entitled to be discharged from liability in any amount. They pray that the plaintiff be required to account for all sums paid to it by Erb, and for the reasonable value of all property received from him, and that credit be given accordingly. There was issue by reply. J. B. Herford, Esq., was ap-

pointed by the court referee to hear the evidence and determine the issues.

The evidence discloses that three sales had been made by Erb prior to May 17, 1907, the proceeds aggregating $8,288.50, which had been applied to the payment of the smaller and one of the larger notes, fully discharging them, the first being paid on March 23, 1907, and final payment on the latter being made on May 17. Up to this date no other sales had been made. Subsequently sales of bucks were made to different persons; in some instances the proceeds being paid by Erb to the plaintiff; in others it does not appear what was done with them. The total of the sums paid to plaintiff resulting from these sales, was $551. All sums paid to the plaintiff were credited to Erb's current account. He drew checks upon this account from time to time to pay his personal expenses, the expenses of caring for the mortgaged property, and to buy other sheep, borrowing other sums from the plaintiff as he needed them. In the fall of 1907, after the note in suit fell due, the wool shorn from the sheep left on hand was sold for $2,200; the proceeds being paid to the plaintiff. Erb gave to the plaintiff his bill of sale for the shearing plant, with other property not involved here; the consideration named being $1. The purpose of this, as stated by the president of plaintiff, was to avoid the expense of foreclosure. After several efforts by the plaintiff to sell this at private sale, it had the sheriff sell it at public auction, and bought it for $330.

The referee adopted the theory that the bank was under no obligation to Erb to apply the proceeds of his sales to the payment of the indebtedness represented by the note, but that, upon demand by Raiff and Anderson after the note fell due, it was under obligation to so apply such proceeds as were shown by the defendants to have been paid to it by Erb, and that they were entitled to be released *pro tanto* from liability, whether such credit had actually been given or not. Accordingly he directed his efforts to ascertain from the evidence what amounts were paid by Erb to the bank after defendants made demand for such

application, and gave credit for them. He found that the plaintiff ought to have so applied the $2,200 received from the sale of wool on August 1, 1907, the $551 received from the sale of bucks, as of October 15, 1907, and the $330, the price brought by the shearing plant, as of October 27, the date of the bill of sale. Upon adjusting the interest, making allowance for the payments admitted in the complaint, he found the defendants Raiff and Anderson liable for a balance of $2,319, with interest at the rate of one per cent per month from October 22, 1907. He recommended judgment against all the defendants in this amount, and against Erb for the full amount of the note, less the admitted payments. The court adopted the findings and ordered judgment accordingly. Defendants Raiff and Anderson, hereinafter referred to as the defendants, have appealed from the judgment and an order denying their motion for a new trial.

Counsel for plaintiff discuss at some length in their brief the liability of accommodation and irregular indorsers under the negotiable instruments law (Rev. Codes, secs. 5877, 5912), and the distinction between the liability of such parties and mere sureties, as defined by section 5680 of the Revised Codes; their purpose being, we presume, to demonstrate that the theory of the case adopted by the trial court is fundamentally erroneous. Consideration of all questions in this connection, however, must now be deemed foreclosed. Counsel did not at any stage of [1] the proceedings in the trial court question the sufficiency of the allegations in the answer to constitute a complete defense, and submitted the case to trial on the theory that defendants would be entitled to judgment if the court found that the proceeds of the mortgaged property which were paid to it by Erb after demand by defendants, together with that part of it which came into plaintiff's hands, was sufficient to pay all the notes. By failing to make timely objection and to appeal, the plaintiff must be deemed to have acquiesced in the theory which the trial court adopted and upon which the case was tried and determined. A party may not himself adopt, or induce the court to

adopt, one theory of the case at the trial, and allow it to proceed to final determination without objection, and thereafter insist in this court that the trial should have proceeded upon a wholly different theory. (*Dempster* v. *Oregon S. L. Ry. Co.*, 37 Mont. 335, 96 Pac. 717; *Cohen* v. *Clark,* 44 Mont. 151, 119 Pac. 775; *Raiche* v. *Morrison,* 47 Mont. 127, 130 Pac. 1074.) We are therefore not required to go further than to examine and determine the questions arising upon the assignments found in the brief of counsel for the defendants.

We notice first the contention that it was error to exclude from the evidence what is designated in the record as Defendants' Exhibit X. The evidence discloses that soon after the notes and mortgage were executed to defendants, Erb began to sell the sheep in lots as he found purchasers, depositing the proceeds with the plaintiff, notifying its officers what he was doing. Early in December, 1906, he sold and shipped 600 wethers to a firm in Spokane, Washington, realizing $3,600. Subsequently he made similar sales, depositing the proceeds as before, until he sold the last of them in October, 1907. Whenever sales were made and the proceeds deposited, he [2] entered in a vest pocket memorandum-book the amounts received, adding in some instances the date of the sale, the number sold, and the name of the purchaser. The memorandum consisted of a list of all amounts received and deposited, except one of $2,200, the price received for wool sold during the summer of 1907. From time to time Erb showed this memorandum to defendant Raiff, who copied off the items upon a sheet of paper which he kept in his office. The Erb memorandum did not show the amount received from the sale of wool. This was included in Raiff's memorandum upon Erb's verbal statement that the sale had netted that amount. The gross receipts of these sums footed up $13,847.50. The Erb memorandum had been lost. The original copy of it made by Raiff had also been lost, but Raiff had preserved a copy. Counsel, having had Raiff state that the copy contained a correct list of the items obtained from Erb, who had theretofore testified that his list of the items was

correct, offered it in evidence as an exhibit to Raiff's testimony, to show the amount actually received by plaintiff. It was excluded as hearsay. The ruling was correct. The memorandum thus kept by Erb was fugitive in character, not intended as a record of his transactions from day to day in his regular course of business. It might have been used by him to refresh his memory or to aid him in giving his testimony, under the rule declared by the statute (Rev. Codes, sec. 8020; *Marron* v. *Great Northern Ry. Co.*, 46 Mont. 593, 129 Pac. 1055), but could have been available for no other purpose. Therefore a copy of a copy of it made by Raiff was as much hearsay as would have been an oral statement by Raiff of the items communicated to him verbally by Erb.

Of the several other contentions made by counsel for defendants, it is not necessary to give special notice to any, except that the court and referee erred in failing to find defendants entitled to credit for other items which they allege in their answer they were entitled to, *viz.:* For $2,150 for wethers sold to one Phillips; for $368, the price of bucks sold to one Bray; and for $1,100, the value of the shearing plant, instead of $330, the amount realized from the sale of it by the plaintiff. Touching the first of these items, the evidence discloses the following: The mortgage included 846 yearling wethers and 1,261 three and four years old —2,107 in all. Of these, Erb sold in December, 1906, 600 for $3,600; on March 5, 1907, 542 for $3,142.25; and about April 3, 265 for $1,546.25. These sales included all of the older wethers and 146 of the yearlings, leaving 700 yearlings still in Erb's hands. During the season of 1907 up to August he bought from other persons 3,490 yearlings, and 1,230 other sheep, the character of which does not appear. He estimated that, of the 700 yearlings covered by the mortgage, as many as 200 were lost by death and other causes, leaving on hand 500. These were mingled with those subsequently purchased and were sold. The evidence does not disclose when or to whom they were sold, nor at what price, except that Erb testified that in November, 1907, he sold all the sheep he had left on hand to Phillips at $4.30 per

head, and paid the proceeds to the bank as a general credit on his account. Included in these, he said, were perhaps a few of the mortgaged sheep, but he was unable to give the number. Aside from this evidence there is nothing to show what became of these wethers, nor does it appear what was their value. With only this evidence before him, the referee was justified in his statement that there was nothing upon which to base a finding in favor of the defendants.

In all, Erb purchased from the defendants 900 bucks. The evidence discloses that of these some were lost by death, and that he sold all the rest to different persons in small lots, the proceeds of these sales, to the amount of $551, being paid to the bank. For this amount the defendants were given credit. One of his sales he made to Bray, but what the number was or the amount paid is not disclosed, except so far as it appears from Exhibit X, which we have held was properly excluded from the evidence. While Erb testified that he was paid by check which he turned over to the bank, this fact is not shown by the books of the bank or otherwise. The same disposition was made of this item as was made of the Phillips item, and we think this was correct.

Plaintiff acquired possession of the shearing plant and made disposition of it as heretofore stated. The evidence shows that [3, 4] it had been purchased from the manufacturer by Erb. It had never been owned by the defendants, but, at their instance, had been included in the mortgage. It consisted of an engine and twelve shearing machines. The engine, the evidence shows, cost originally $500, and each machine $50, making the total original cost $1,100. It had been used during the season of 1906. It was used during the season of 1907, four more machines being added, making the entire cost $1,300. At the time the bill of sale was executed the plant was, according to Erb's testimony, as good as new. No witness stated, however, what its reasonable market value was at the time plaintiff got possession of it, or at the time when it was sold. The referee was of the opinion that the price brought at the sale was the best evidence of its value, and made his finding

accordingly. The original cost price of an article is some evidence of its market value (*Osmers* v. *Furey*, 32 Mont. 581, 81 Pac. 345); so also is the amount brought by it at sheriff's sale. (*Id.*) Neither, however, is conclusive. The referee, in arriving at a conclusion upon the evidence before him, was compelled to choose between the extremes of value fixed by it. There were no data to justify the finding of any value between these extremes. Under these conditions we do not think the referee or the court was guilty of palpable abuse of discretion.

It may be remarked, in general, that the evidence wholly fails to sustain the allegation of the answer that the plaintiff agreed to look to the mortgage exclusively as security in the first instance. The evidence justifies the conclusion that the mortgage was taken for the benefit of the defendants and at their request. [5] It also justifies the conclusion that the defendants knew the course of conduct Erb was pursuing with reference to the property and its proceeds; he, in one instance at least, seeking their advice as to the propriety of the course to be pursued by him. They knew that he was purchasing other sheep with which he was mingling the mortgaged property, and that its identity was thus likely to be lost. Both they and the plaintiff seem to have tacitly understood that Erb was to have free hand in the handling of the property and its proceeds for the purpose of speculation, and that upon a disposition of it he would discharge the notes by application of the proceeds. Upon the theory that defendants' liability was that of sureties only, and that plaintiff was bound to refrain from doing anything which would impair the mortgage security or which was inconsistent with their rights as sureties (Rev. Codes, sec. 5686), after having impliedly given their assent to the course of conduct pursued by Erb, they cannot insist that they were injured by any loss which occurred through his mismanagement or misappropriation of the proceeds.

The judgment and order are affirmed.

*Affirmed,*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.