STATE, Respondent, *v.* McCOMAS, Appellant.

(No. 6,772.)

(Submitted January 12, 1931.  Decided February 6, 1931.)

[295 Pac. 1011.]

*Mr. R. H. Wiedman,* for Appellant, submitted a brief and argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. L. V. Ketter,* Assistant Attorney General, for the State, submitted a brief; *Mr. Ketter* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Defendant has appealed from a judgment of conviction of the crime of grand larceny and from an order denying her motion for a new trial.

The sufficiency of the information is not challenged. It charges the larceny, on September 11, 1929, of a saddle of the value of $80, belonging to R. S. Harper. The principal assignment of error challenges the sufficiency of the evidence in corroboration of that of an accomplice to meet the requirements of section 11988, Revised Codes 1921.

The accomplice, E. H. Arthur, testified that on September 11 he saw defendant and Kenneth Bramblett in the Cort Hotel in Big Timber. In the presence of the defendant, Bramblett asked the witness if he wanted to take a trip. The witness re-

plied in the affirmative. Bramblett then left his car, a Ford coupe, at the home of Mrs. Orr in Big Timber, and arranged to take the trip in the defendant's car, a Nash coach. They made arrangements to start at 11 o'clock that night. Defendant and Eva Hughes were together in the car when they came after the witness and Bramblett. Eva Hughes was left in town, and the defendant, in company with Bramblett and the witness, drove to the Hart ranch, which is about twenty-five miles northwest of Big Timber, and about straight west of Melville. Upon arriving there, another car was coming behind them; so they drove past the ranch about two or two and a half miles, until the car passed, and then turned around and drove back as far as the gate leading into the Hart ranch, and stopped. The witness and Bramblett got out of the car and walked to the ranch, a distance of a quarter or half a mile. They went into a shed, took four saddles and carried them to the gate, where the McComas car stood, and put them in the back seat of the car. They then started back to the shed after tools and harness. When they reached the top of a hill between where the McComas car stood and the shed where the saddles were found, they saw another car approaching. It stopped at the McComas car a short while, and then turned into the gate leading into the Hart ranch. After the car stopped for a minute, the McComas car drove on. The witness and Bramblett then ran toward the road and got in the McComas car. They then drove through Melville, Gibson, Rapelje and Billings and stopped at the Bill Huntington ranch about sixteen miles east of Billings. Defendant was driving the car. The witness and defendant stayed in the Huntington house while Huntington and Bramblett took the car and drove away. The saddles were in the car when they arrived at the Huntington ranch. In about thirty minutes the McComas car returned. They then had breakfast. They left the Huntington ranch shortly after noon on September 12, returning to Big Timber. The saddles were not in the car when they started the return trip to Big Timber. The saddles were subsequently found by

the sheriff of Yellowstone county in an old log shack used as a granary on the Huntington place. One of them belonged to R. S. Harper.

By way of corroboration, tending to connect the defendant with participation in the crime, the witness R. S. Harper, the owner of the saddle alleged to have been stolen, testified that he had gone to Big Timber on the night of September 11. On his return from Big Timber to the Hart ranch, at about 11:30 at night, he saw a car standing in front of the Hart gate. He drove his car alongside it and stopped to inquire if help was needed. Receiving a negative answer, he drove through the gate to the house on the Hart ranch. The car standing at the gate was a Nash car, and defendant was in the car. After he spoke the car started to the north. He missed the saddles on the morning of September 12, and knew that his and other saddles were hanging in the Hart barn on the evening of September 11. He saw footprints on the morning of September 12 between where the car stood and the Hart house and around the place where the car stood.

Ed. Brannin, sheriff of Sweet Grass county, traced car tracks extending two and a quarter or two and a half miles past the Hart ranch and back to the vicinity of the Hart place. He ascertained from the imprints made by the tires that the right front tire was practically new, while the other three were well worn.

Frank Whitsell, under-sheriff, saw defendant in Big Timber about the 14th of September, looked at the tires on her car, a Nash, and the right front tire was practically new, the others worn. He also saw defendant with the Nash car in Big Timber on September 11.

The testimony of these witnesses was sufficient corroboration of that of the accomplice to make out a case for the jury. The corroboration is sufficient if it tends to connect the defendant with the commission of the crime.

The evidence, aside from that of the accomplice, tends to show that the Nash car of the defendant was at the gate of

the Hart ranch at about 11:30 P. M. on September 11; that defendant was then in the car. The circumstances tend strongly to show that it was this car that had been driven past the gate, turned around, and returned to the gate. The footprints are circumstances tending to show that the saddles were carried away in that car, as the accomplice stated.

It is argued by defendant that, viewing the corroborating testimony in the light most favorable to the state, it proves nothing more than the presence of the defendant in the vicinity of the place where the crime was committed, at the time of its commission, and that there is nothing to indicate that she knew the crime was being committed. We do 'not so view the evidence. The jurors were warranted in believing that defendant displayed a guilty knowledge when she started her car in motion as Harper stopped his car beside hers at the gate of the Hart ranch, as testified to by Harper. They were also justified in reaching the same conclusion from the fact that, when the three had reached the Hart ranch and saw another car coming, they drove past the ranch gate about two and a half miles and then returned to it. Also it was competent for the jurors to infer that all the parties knew they were engaged in committing a crime, since there was no reason shown, compatible with their innocence, for leaving the car at the gate and carrying the saddles to it rather than driving the car to the barn or shed in which the saddles were kept.

Defendant complains that the court gave to the jury, over objection, the following instruction: "You are instructed that an accomplice is one who knowingly, voluntarily, and with common intent with the principal offender unites in the commission of a crime, either by being present and joining in the criminal act, by aiding and abetting another in its commission, or, not being present, by advising and encouraging its commission."

Complaint is made that the latter part of this instruction authorized the jury to convict the defendant without being present at the place where the crime was committed, and that

there was no evidence upon which to base the instruction to that effect. The only purpose of the instruction was to advise the jury what was meant by the word "accomplice." In other instructions the term accomplice was frequently used. The jury was entitled to know what the word meant. That the instruction gives the proper definition of the word is conceded.

The court, without objection, gave an instruction substantially in the language of section 10732, Revised Codes 1921, in explanation of who are principals in the commission of a crime. That instruction, of course, had reference to defendant, and the jury was told that she might be a principal in the commission of a crime though not being present. But, as stated, that instruction was not objected to. Even though objection had been made, we think it was properly given to the jury to aid it in determining the legal consequences flowing from the evidence showing that Arthur and Bramblett actually took the saddles while defendant was absent from the place from which the saddles were taken.

Defendant assigns error on the refusal of the court to give her offered instruction numbered 15, reading: "You are instructed as a matter of law that where a conviction for a criminal offense is sought, the state must not only show beyond a reasonable doubt that the alleged facts and circumstances are true, but they must be such facts and circumstances as are incompatible upon any reasonable hypothesis with the innocence of the accused, and incapable of explanation upon any reasonable hypothesis other than that of the guilt of the defendant."

This is not a case depending for conviction upon circumstantial evidence alone. There was direct evidence of the accomplice that defendant actually participated in the crime. It is not necessary that evidence in corroboratoin of an accomplice be sufficient to warrant a conviction on it alone. In speaking of an offered instruction of like import, in *State* v. *Lyford,* 87 Mont. 325, 287 Pac. 214, 216, we said: "It then proceeded to state what elements must exist to justify conviction

on circumstantial evidence. The offered instruction was properly refused. In effect it was a direction that the testimony of accomplices must be wholly disregarded. Granting that the corroboration of the accomplices was by circumstantial evidence only [see *State* v. *Cobb*, 76 Mont. 89, 245 Pac. 265], the instruction was properly refused because the corroboration of an accomplice need not be sufficient to justify a conviction on it alone. (*State* v. *Bolton*, 65 Mont. 74, 212 Pac. 504; *State* v. *Yegen*, 86 Mont. 251, 283 Pac. 210; *State* v. *Broell*, 87 Mont. 284, 286 Pac. 1108.)'' The offered instruction was properly refused.

The court, over defendant's objection, admitted evidence showing the cost price of the saddle to be $76. The evidence shows that the saddle was purchased new on September 3; that it had been used only four or five days before it was stolen. When necessary to establish the value of stolen property in order to fix the grade of the crime, it is the market value and not the original cost that must be determined (17 R. C. L. 66), and the jury was so instructed in this case. But evidence of the cost price is admissible, as a factor to be considered with others, in determining the market value. (*Osmers* v. *Furey*, 32 Mont. 581, 81 Pac. 345; *Columbus State Bank* v. *Erb*, 50 Mont. 442, 147 Pac. 617; *Rowley* v. *Mullen*, 74 Mont. 283, 240 Pac. 374.) The rule especially applicable to the facts here is well stated in 36 C. J. 884, as follows: ''In determining the market value, evidence of the purchase price, and the condition of the property when stolen, is admissible, especially when the property has been used but a short time.'' Evidence of the cost price of the saddle was properly received.

Other assignments of error have been considered by us, and we find no cause for reversing the judgment or order appealed from.

The judgment and order are affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and MATTHEWS concur.