STATE of Missouri, Respondent,

v.

George A. BEVELLE, Appellant.

No. KCD 26933.

Missouri Court of Appeals,
Kansas City District.

Sept. 2, 1975.

Robert G. Duncan, William E. Shull, Gladstone, for appellant; Duncan & Russell, Gladstone, of counsel.

John C. Danforth, Atty. Gen., Jefferson City, and Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Before SOMERVILLE, P. J., PRITCH-ARD, C. J., and TURNAGE, J.

PRITCHARD, Chief Judge.

Appellant was convicted by a jury of stealing over $50.00. Upon a finding by the court of the allegation of a prior felony offense, the court sentenced appellant to 5 years imprisonment in the Department of Corrections.

Of the five points presented, the first and most strongly argued by appellant is that the trial court erred in receiving testimony from witness McGregor (acting manager of Skaggs store), concerning the value of the property allegedly stolen which was based upon invoice cost codes—a comparison between the code letters on the tag for the item and a master list which McGregor had received in a letter from the company headquarters. If the testimony was properly received as against the contentions that it was hearsay, was not the best evidence, was an unsupported opinion, and that a proper foundation had not been laid, the state proved its felony charge of stealing over $50.00 which would make the penalty portion of § 560.161, subd. 1(2), RSMo 1969, applicable. If the testimony was inadmissible, then subd. 1(1) of said penalty section

would be applicable and a new trial would have to be ordered to give the jury the option of applying the misdemeanor punishment of a fine of not more than $1,000.00, confinement in the county jail for not more than one year, or both.

It is not contested that the evidence was sufficient to show stealing under these facts: On December 3, 1972, Monti Paul Quenelle was on duty as a security officer of Skaggs Drug Store. At about noon Monti, in civilian clothing, was at the front or south end of the east aisle of the store from which position he could see appellant (who was identified by Monti in court) about 30 feet down the aisle take two yellow boxes into his hand, and one of them was placed inside his overcoat. Monti followed appellant around the store and saw him take down some Max Men's hairstyling combs from a display. Appellant then walked up the aisle to the south, out to the west again, and out an unattended checkout stand. Monti waited to see if appellant was going to go on up to the cashier's stand and pay for the articles, but he went out of the stand and directly on out the door without pausing. About 50 feet from the front of the store Monti identified himself and asked appellant to come back into the store, that he wanted to talk to him. "Q. And did he acquiesce with this request of yours? A. Did he what? Q. Did he go along with this? A Well, yes, he said, 'Well, you got me this time,' and turned around and walked back in the store with me." In the storeroom of the store appellant unloaded several different items from his coat and piled them in the middle of the floor. All of the items were identified by Monti and received into evidence. Monti helped appellant take off his overcoat, there being a sport coat worn by him underneath it. There were four or five safety pins pinned to the lining of the coat and back of the sport coat, which Monti helped unfasten. The overcoat had a black lining and an additional blue lining sewn so that there were two pocket-like openings at the sides.

Neal Lyde McGregor, acting manager of Skaggs Drug Company, 1614 East 63rd Street, Kansas City, Missouri, testified as to the values of the items deposited by appellant on the floor of the storeroom. Skaggs generally received goods from manufacturers along with the billing invoices. The store manager appraised them for payment and then invoices and billing were sent to the Skaggs General Headquarters in Salt Lake City, Utah. The invoices listed the price or the cost to the store, the wholesale price, so the store would have records of what each item cost it. On each item there was a green tag with Skaggs name on it, the retail price, and by letters in the upper right-hand corner of the tag it is indicated what the item cost Skaggs. "The cost is in a code. There is—well, you convert a letter, such as 1 or 2 into a letter, as I have got written on this card here (indicating). So this particular item here with a cost of F L J would cost us 3 5 6—." McGregor went through all of the property and checked the cost codes, and found the total cost value of the merchandise to have been $59.44. The cost code letters were furnished by the District Manager, and "This is a cost code that is used by all the stores throughout the chain." "Q. When is this cost coding placed on? Well, when is the tag placed on the property? A. When we receive the property and unpack it, we price it then—[objection overruled]. A. It is marked immediately and then it is put out on the sales floor." At times, McGregor himself would take the invoices and put the cost code and the retail price on the merchandise. McGregor did not have the invoices with him at trial, and appellant moved to strike his testimony upon the ground "that the invoices would be the best evidence of what showed actual sales price." It was developed on re-direct and re-cross-examination of McGregor that he did not find the invoices on the particular items, "A. I don't think that I could come up with the exact ones."

■ *State v. Berns,* 502 S.W.2d 364 (Mo. 1973), rules appellant's Point I contentions against him. There the defendant claimed

that evidence of value of the goods claimed to have been stolen, which was based upon a memorandum prepared by the witness from company inventory records, was inadmissible because: the witness had no personal knowledge of the value; that the inventory records were the best evidence of the values; and that the witness' testimony was hearsay. The court quoted 31A C.J.S. Evidence § 181, p. 459, " '[v]alue, whether intrinsic or as regulated by the "market," is a quality so subtle and intangible, is a function of so many variables * * * that a relaxation of strict rules of evidence is necessary, and use must be made of such probative methods as are available.' " Here, as in Berns, there would have been required a check of a great many items, which as the evidence shows, were received daily, unpacked and the price stickers affixed to the items. McGregor testified that he did not think he could come up with the exact invoices which would match the items claimed to have been stolen. And, as in *United States v. May,* 419 F.2d 553 (8th Cir. 1969) [where the court held that testimony of value of a carton of shells based upon company wholesale lists was admissible], the evidence that Skaggs cost codes were supplied and used throughout its chain (this evidence came in through cross-examination of McGregor), that they were affixed to items as shown by costs on invoices is sufficient to establish that the total value of the items was over $50.00. See also *State v. Long,* 256 Iowa 1304, 130 N.W.2d 663, 666[7] (1964), where the court said, "We may add that we think evidence of the *selling* price of this new pump [which bore a price tag] was admissible as bearing on its fair market value. (Citing cases.)" (Emphasis and brackets added.) In *State v. McComas,* 89 Mont. 187, 295 P. 1011, 1013[6, 7] (1931), evidence of the cost price of a saddle, purchased a few days before it was allegedly stolen, was held admissible, the court saying, "But evidence of the cost price is admissible, as a *factor* to be considered with others, in determining the market value." Here the jury could legitimately find that the items in question, taken from Skaggs display shelves where they were displayed for sale, were new, and that they had values as shown by the coded Skaggs cost prices fixed thereon.

Instruction No. 5 is:

"If you find and believe from the evidence beyond a reasonable doubt:

First, that on the 3rd day of December, 1972, in the County of Jackson, State of Missouri, the defendant took cologne, vitamins and a hair comb owned by Skaggs Drugs, a corporation, and

Second, that the property taken was of the value of at least fifty dollars, and

Third, that the property was taken by the defendant with the intent to permanently deprive Skaggs Drugs, a corporation, of its use of such property and to convert it or any part of it to the use of defendant, and

Fourth, that the property was taken by the defendant without the consent of the owner,

then you will find the defendant guilty of stealing property of the value of at least fifty dollars."

In Point III, appellant complains of this verdict directing instruction, contending error because it allowed the jury to convict him of taking property of a value in excess of $50.00, although he (may) have intended to keep or deprive the owner thereof of property of a value less than $50.00. Improving on clarity, appellant makes reference to the words of paragraph third of the instruction: "and to convert it *or any part of it* to the use of defendant." Appellant's argument goes on, "if a defendant took $100 in property but intended to permanently deprive the owner of a portion of that property with a value of $35, then a conviction could not be sustained for felonious stealing. Although the property which was actually removed had a value in excess of the statutory amount, a 'theft' of property of that value had not occurred since there was no intent to permanently deprive

the owner of all of the property or the property in its entirety." The point and the argument ignores the fact that there was no evidence at all that appellant intended to permanently deprive Skaggs of anything less than its property of the value of $59.44, by converting only a portion of it to his own use. Appellant offered no evidence in his own behalf. He did not testify except as to applicability of the Second Offender Act as based upon a Minnesota conviction (discussed infra). The instruction is of course erroneous because of its inclusion of the words "convert it *or any part of it* to the use of defendant", because it was not referable to any evidence in the case. [The italicized words were obviously and erroneously taken from what is now MAI–CR 7.71, which has reference to three or more prior convictions of stealing, in which case the value of the property is not important.] There was absolutely no evidence upon which the jury could find that appellant intended to convert less than all of the property to his own use. The jury could not have been misled under the clear evidence of appellant's guilt: He was seen putting items into his coat; he went out of the store without paying for them; he was apprehended outside and brought into the stock room where all of the items taken by him were dumped on the floor. "[T]he presumption is that an instruction having no application to the case made by the pleadings and proof does not injure accused. This rule is particularly applicable where accused's guilt is clearly established by the evidence * * *." 24B C.J.S. Criminal Law § 1922(3), p. 164. Here, the italicized portion of the instruction was surplusage: If it were not, then appellant would have been entitled to an instruction on the misdemeanor offense of stealing under $50.00, which the evidence here does not support. Other portions of the instruction fairly submitted the charge to the jury: That the property *taken* was of a value of at least $50.00; that it was *taken* by the defendant *with the intent to permanently deprive* Skaggs * * * of its use; and that the

property was taken * * * without the consent of the owner. Under the evidence the error in the instruction was not prejudicial to appellant, and the point is ruled against him.

■ By Point IV, appellant contends that the trial court erred in finding the Second Offender Act, § 556.280, applicable, because there was "inadequate and insufficient and improperly authenticated evidence of a prior conviction" and there was not a prior conviction within the meaning of the Act. It is first said that the record of appellant's Minnesota conviction is insufficient because it did not comply with § 631.40, Minn.R.S. 1945, relating to the preparation of judgment rolls, in that it failed to include a copy of the *indictment.* What the minutes show is that appellant was convicted of grand larceny on his plea of guilty, in the second degree (which is punishable under § 622.06, Minn.R.S.1963, for not more than 5 years imprisonment in the state prison as a maximum). Although no term was specified, appellant was sentenced by the Minnesota court to "be taken by the sheriff of this county to the State Reformatory located in Sherburne County in this state and there committed according to law." Then the court suspended and stayed execution of the sentence upon the condition that appellant pay $500.00 into the county fine fund, and upon doing so that he leave the State of Minnesota and remain out of it. The judgment entry recites that an information was returned by the county attorney charging appellant with grand larceny in the second degree. It would add nothing for the purpose of application to include the indictment in the rolls because § 556.280 requires only that a person be *convicted* of any offense punishable by imprisonment in the penitentiary. The record shows these facts. Any omission in including an indictment or information in the judgment roll is immaterial to the showing of a prior conviction of a felony.

■ Appellant says that the sentence is valid only if it directs punishment to be by

confinement at hard labor under § 631.42, Minn.R.S., repealed in 1963, but in effect when he was sentenced. Again, the inquiry is only whether there was a prior conviction of a felony under § 556.280. The judgment roll and minutes here, admitted to prove the applicability of the Second Offender Act, were adequate in the foregoing respects.

■ Appellant says his sentence was suspended, and therefore he cannot have the conviction introduced into evidence under *State v. Gordon,* 344 S.W.2d 69 (Mo.1961). In *Gordon,* the sentencing itself was suspended, and it was properly held that there could be no prior conviction for the purpose of finding the Second Offender Act applicable. Here, the record indicates that the *execution* of the sentence was suspended, which under *State v. Briggs,* 435 S.W.2d 361 (Mo.1968), does not prevent the application of the Second Offender Act. In *Briggs,* the court said, 435 S.W.2d 363[3], "[T]he California proceedings disclose that the defendant was sentenced and that the execution of the sentence was suspended and he was placed with the California Youth Authority, not that sentencing was suspended."

■ Appellant says that the Minnesota record dos not say that after sentencing he was subsequently placed on probation, paroled, fined or imprisoned therefor. Reasonably construed, the Minnesota judgment entry was a fine of $500.00. It was provided that it be paid "into the same fund to which fines are usually allocated." The penalty statute (§ 622.06, Minn.R.S., supra) provides that the minimum punishment for grand larceny, second degree, may be a fine of not more than $500.00. Upon the objections presented these records of prior convictions, for the purpose of applying § 556.-280, were admissible.

■ Appellant attacks § 556.280 as being unconstitutional saying that it is an ex post facto law and that it allows the use of a conviction so stale and old as to amount to a denial of due process and equal protection of law. In *State v. Donnell,* 351 S.W.2d 775

(Mo.1961), the court held that § 556.280 was not an ex post facto law because it was procedural in nature. Appellant cites no case which holds that his 1948 conviction is so stale and old that its use amounts to a denial of due process of law in using it as a basis for the application of the Second Offender Act. Note that the Minnesota charge was for shoplifting, the same offense as here charged. The contentions are ruled against appellant.

It is not contended by appellant that the Minnesota court records were not duly authenticated in accordance with § 490.220, RSMo 1969. See *State v. Worsham,* 416 S.W.2d 940, 943 (Mo.1967). At trial appellant acknowledged that he was the person described in the record of the prior conviction.

■ In Point II, appellants attacks Instruction No. 5, supra, saying that it did not require the jury to find an essential element of the offense, namely, "that the taking was felonious, or intentional, or words of similar import." § 560.156, subd. 1(2) defines " 'Steal', to appropriate by exercising dominion over property in a manner inconsistent with the rights of the owner, either by *taking,* obtaining, using, transferring, concealing or retaining possession of his property" and by subd. 2, it provides, "It shall be unlawful for any person to *intentionally* steal the property of another, either *without his consent* or by means of deceit." (Italics added.) Instruction No. 5 fairly submits the words of the statute, i. e., the taking, the intent to permanently deprive, and the taking without consent. Since the evidence showed, as above ruled, that the property was of a value over $50.00, the offense was a felony under § 560.161. *State v. Price,* 362 S.W.2d 608, 611[5] (Mo. 1962). The words "intent to permanently deprive" are of equal import to the word "intentional." The jury was required to find that the property had a value of at least $50.00, defined to be a felony under § 560.161. It is not necessary to include in

the instruction that the taking was "felonious." Point II is overruled.

The judgment is affirmed.

All concur.