STATE of Missouri, Respondent,

v.

Stanley L. BRIGGS, Appellant.

No. 53465.

Supreme Court of Missouri,
Division No. 2.

Dec. 9, 1968.

Motion for Rehearing or for Transfer to the
Court En Banc Denied Dec. 31, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Lindell R. Church, Special Asst. Atty. Gen., Springfield, for respondent.

Robert G. Duncan, Lewis E. Pierce, Pierce, Duncan, Beitling & Shute, Kansas City, for appellant.

FINCH, Presiding Judge.

Defendant was prosecuted under the Second Offender Act (§§ 556.280 and 556.-290) [1] for striking, beating and wounding a police officer of Riverside, Missouri, in violation of § 557.215, RSMo Supp.1967, V.A.M.S. The trial court, having conducted a hearing outside the presence of the jury, found the Second Offender Act applicable and sentenced defendant to imprisonment for two years after he was convicted by the jury of assaulting a police officer. Defendant appeals. We affirm.

This case comes to the writer on reassignment.

1. All statutory references are to RSMo 1959, V.A.M.S., unless otherwise indicated.

The evidence, viewed most favorably to the State, would support these findings: Kenneth Ketcham was a part-time uniformed policeman of Riverside, Missouri, a city of the fourth class, and had so served for about four years. On the evening of September 23, 1966, he responded to a call to Kelly's Tavern in Riverside. There had been some fights in the tavern but these occurred before the arrival of Ketcham. On arrival, he found the owner, Mr. McKeon, Mrs. McKeon, and various patrons, including the defendant Briggs. Defendant was standing at the bar and his clothing was mussed up and disorderly, his eyes bloodshot, and his speech slightly slurred. McKeon pointed at the defendant. Ketcham then told defendant that he was placing him under arrest and he would have to come along. Meanwhile, Sgt. Meyers of the Riverside Police Department, dressed in civilian clothes, also had come in and was standing there when this occurred. Defendant responded to Ketchum by saying, "You know what's going to happen if we go out there" or "You know what you are going to get when you get outside". Ketcham responded that they could go one of two ways. Briggs then agreed to go outside and left the tavern, followed by Meyers and then Ketcham. Meyers had his hand on defendant's arm.

The three of them had to go around a pickup truck on a parking lot to get to where the patrol car was parked. There were pipes or a ladder, or both, extending out beyond the tailgate. As they went around the end of the truck, defendant turned and hit Sgt. Meyers, who went to the ground when he tripped over the ladder. The defendant then stepped back and with his fist hit Ketcham on the cheek, causing a bruise. Ketcham then jabbed defendant in the ribs with his baton and defendant continued to swing at and strike Ketcham with his fists. When Sgt. Meyers got up from the ground, he grabbed defendant and Meyers and Ketcham then subdued defendant and held him on the ground while they placed handcuffs on him. They then put him in the patrol car and took him to the police station.

Defendant thereafter was charged under § 557.215 with assaulting a police officer. A charge of drunkenness under the city ordinance was never filed.

■ Defendant's first contention is that the court erred in not submitting the issue of punishment to the jury for the reason that the allegations of the information were insufficient to invoke the Second Offender Act.

Section 556.280 provides that the court may assess punishment where a defendant previously has been convicted of a felony and was "sentenced and subsequently placed on probation, paroled, fined or imprisoned therefor * * *." Section 556.290 provides that convictions in states outside of Missouri also provide a basis for application of the Second Offender Act.

The information herein charged that defendant "on or about the 7th of January 1964, in the Superior Court of the State of California in and for the County of Imperial was duly convicted of the offense of escape and in accordance with said conviction was duly committed to the Youth Authority of the State of California and was subsequently discharged."

These allegations are not a model to be followed, but we have concluded that they are sufficient to meet the requirements of the statute. The information alleges defendant's conviction and that he then was committed to the Youth Authority and subsequently discharged. At the hearing conducted out of the presence of the jury on the issue of the applicability of the Second Offender Act the State introduced an authenticated copy of the proceedings in California. That document included the sentencing of defendant, as follows:

"THAT WHEREAS THE said STANLEY L. BRIGGS having been convicted by the court of the crime of ESCAPE FROM JAIL WITHOUT FORCE OR VIOLENCE

"IT IS ORDERED, ADJUDGED AND DECREED that the said STANLEY L.

BRIGGS be imprisoned in a California State Prison for the term prescribed by law.

"HOWEVER, execution of sentence is suspended and commitment is withheld and the defendant is referred to the California Youth Authority for acceptance."

The transcript further shows subsequent commitment of the defendant to the California Youth Authority for the time prescribed by law. There was testimony that the defendant then reported on his parole to state probation and parole officers in Missouri under the Interstate Compact and was given a final discharge from the State of California on September 26, 1966.

■ The information herein is not comparable to the information in the cases of State v. Miller, Mo., 427 S.W.2d 506, and State v. Wiley, Mo., 412 S.W.2d 485, cited and relied on by defendant. In both of those cases the information charged that the defendant was convicted and sentenced but then stopped. There was nothing whatsoever to indicate that he had been placed on probation, paroled, fined or imprisoned. The information against defendant Briggs did not stop with his sentencing but proceeded to allege that defendant was committed to the California Youth Authority and subsequently discharged. If defendant desired more detailed information, he had · the means of obtaining it by a motion for a bill of particulars pursuant to Supreme Court Rule 24.03, V.A.M.R. He did not do so and he thereby waived further details. See State v. Kesterson, Mo., 403 S.W.2d 606 [5], and cases therein cited.

■ Defendant objected to the introduction of the authenticated copy of the California proceedings on the theory that they disclosed that defendant received a suspended sentence and that such suspended sentence, under the authority of State v. Gordon, Mo., 344 S.W.2d 69, could not be the basis for invoking the Second Offender Act. This contention cannot be sustained because the California proceedings disclose that the defendant was sentenced and that execution of the sentence was suspended and he was placed with the California Youth Authority, not that sentencing was suspended.

■ A second assignment by the defendant is that § 79.250 [2] as it existed in September 1966, at the time of this incident, required a police officer of a fourth class city to be a resident and qualified voter of the city, and that Ketcham, being a nonresident of Riverside, was not qualified to serve as a police officer. Consequently, says defendant, no duties were imposed on Ketcham by law and defendant's motion for judgment of acquittal should have been sustained.

It is clear that under the provisions of § 79.250, as they then existed, Kenneth Ketcham did not possess the requisite residence qualifications to serve as a police officer at Riverside. However, the city had undertaken to appoint him as a part-time police officer some four years previously, and he had been acting regularly in that capacity. Under such circumstances, he was a de facto officer. In State v. Dierberger, 90 Mo. 369, 2 S.W. 286, the State was prosecuting a murder charge against one who, although appointed a deputy constable, had not taken the oath of office. The court reversed the conviction and remanded for a new trial, finding that defendant was a de facto officer and in that prosecution should be treated as an officer, with the instructions drafted accordingly. In the course of the opinion the court, quoting from People v. Hopson, 1 Denio 574, 575, said (2 S.W. l. c. 288): " 'But it is equally well settled that the acts of an officer *de facto,* though his title may be bad, are valid, so far as they concern the public, or rights of third persons who have an interest in the things done. Society could hardly exist without such a rule. * * * The people are prosecuting for a breach of the public peace; and it is enough that Lascells was

---

2. This section was amended, Laws 1967, p. ——, S.B. No. 39, § 1.

an officer *de facto,* having color of lawful authority. · The rights of a creditor, the due administration of justice, and the good order of society all concur in requiring that he should be respected as an officer until his title has been set aside by due process of law.' See, also, to the same effect, Heath v. State, 36 Ala. 273. Bishop says the better opinion is that third persons may be indicted for resisting a *de facto* officer. Bish. Crim.Law, (8th Ed.) § 464." Subsequently, on the same page, the court continued: "These authorities show that Horne, and, indeed, Jackson, had no right to resist the defendant when in the performance of the legitimate duties of a constable, and would be liable to an indictment for so doing." See also Reed v. State, 103 Ark. 391, 147 S.W. 76; 5 Am.Jur.2d, Arrest, § 24, p. 714, and 39 Am.Jur., Obstructing Justice, § 9, p. 507.

A third ground asserted for reversal by defendant is that Ketcham was making an unlawful arrest and defendant had a right to resist such an arrest. This contention is based on the assertion that Ketcham had no warrant for arrest of the defendant, was not arresting for a felony, and did not observe defendant commit a misdemeanor or violate a valid city ordinance in the officer's presence.

There is no contention by the State that Ketcham had a warrant for defendant's arrest or that the defendant was arrested in the tavern for commission of a felony. Ketcham testified that he arrested the defendant for drunkenness in violation of a city ordinance. The City of Riverside had an ordinance adopted April 17, 1956, which provided as follows: "It is hereby decreed to be unlawful for any person to become drunk or to so conduct themselves as to be disorderly within the limits of the City of Riverside." Defendant asserts that this ordinance does not limit its application to public drunkenness, is unconstitutional as an invasion of privacy and amounts to a denial of due process under Article XIV of the United States Constitution and Article I, § 10 of the Constitution of Missouri,

V.A.M.S. He claims that any man has a right to become drunk in his own home, that it becomes a matter of public concern only when the intoxication concerns other members of the public or occurs in public places, and that an ordinance which purports to prohibit drunkenness at any and all places in the city is unconstitutional. A similar ordinance, he says, was held unconstitutional in City of St. Joseph v. Harris, 59 Mo.App. 122.

There was evidence by Ketcham, Sgt. Meyers and Mrs. McKeon which would justify a finding that defendant was drunk. This was in the presence of the officer. Section 80.410 provides that a police officer shall have the right to arrest without process for violation of a city ordinance where the violation of the ordinance is committed in his presence. This is an old statute and was followed in the early case of Village of Oran v. Bles, 52 Mo.App. 509. The only question presented is whether this authority exists if the particular city ordinance subsequently is held to be unconstitutional.

The State asserts that the ordinance of Riverside is distinguishable from that held unconstitutional in City of St. Joseph v. Harris, supra, and is constitutional. Secondly, the State says that if it is not distinguishable, then the St. Joseph case should be overruled. It also contends that even if the ordinance is unconstitutional, the defendant had no right to resist arrest by Officer Ketcham. We are of the opinion that this third contention of the State must be sustained and hence we need not consider the constitutionality of the ordinance.

· The City of Riverside had adopted in 1956 the ordinance making drunkenness an offense. So far as the record here discloses, the constitutionality of the ordinance had never been attacked. Under such circumstances, it would not have been proper for a police officer of the city to take it upon himself to pass upon the validity of the ordinance. Until repealed or held invalid by a court of competent jurisdiction, it was the duty of the officer to enforce the ordinance. Likewise, it was not the

right of an individual to resist arrest on the basis of a contention that the law he allegedly was violating was unconstitutional or invalid for some other reason. A defendant may raise that question as a defense to the charge and have the validity or constitutionality of the statute or ordinance determined, and he will be acquitted if his claim of unconstitutionality or invalidity is sustained. Courts are established and available for the purpose of determining such questions. Such procedure is an integral part of an orderly society under a government of law. To permit persons to resist arrest and attack an officer and then be excused if they successfully question the constitutionality or validity of a statute or ordinance would lead to chaos and would be intolerable. This being true, when one resists arrest, as here, and strikes and wounds the officer, he is subject to criminal prosecution for violation of the statute which prohibits such attack on an officer engaged in the performance of the duties of his office. This is true even if the ordinance is determined subsequently to be unconstitutional.[3]

The foregoing conclusion is in harmony with this court's decision in Manson v. Wabash Railroad Co., Mo., 338 S.W.2d 54. In that case plaintiff sought recovery for false arrest and false imprisonment, assault, and malicious prosecution arising out of an arrest by a private watchman for the railroad based on an alleged violation by plaintiff therein of an ordinance of the City of St. Louis. The plaintiff contended that the ordinance was invalid and could not serve as a justification for his arrest. In disposing of that issue, this court en banc said, l. c. 59: "It is our opinion that an officer has the right to rely upon the validity of an ordinance in making an arrest until such time as the ordinance is declared to be void. In this case, the ordinance had not been held to be void. We need not pass upon the validity of the ordinance because, in the

circumstances, the watchman Gabbert had the right to depend upon its validity." Officer Ketcham had the same right with respect to the Riverside ordinance. Subsequently, the opinion in Manson pointed out that although a majority of the states hold that an officer may be held civilly liable for arrests made under ordinances or statutes subsequently declared invalid, a minority of the states hold to the contrary, and that Missouri adheres to the minority view. In that connection, the court went on to say, l. c. 59: "It would tend to lead to a breakdown of local law enforcement to place upon a police officer charged with enforcing ordinances the burden of correctly deciding questions of constitutionality, conformity with state law, etc. (questions which perplex experts in the law and often result in divided opinions by judges and courts) before making an arrest, at the risk of incurring personal liability in a civil action should the ordinance later be invalidated by judicial decision." It likewise would tend to lead to a breakdown of law enforcement to excuse one for fighting with an officer and resisting arrest on the ground that the ordinance or law under which he is being arrested is unconstitutional or invalid. We overrule defendant's third assignment.

■ Finally defendant asserts that Instruction No. 7, which was the State's main verdict-directing instruction, was bad because it did not require a finding that Ketcham was "actively engaged in the performance of duties imposed on him by law," language used in § 557.215 as well as in the information filed against the defendant. In arguing this point, defendant again contends that he had the defenses that Ketcham was not a resident of Riverside and hence not a qualified officer, and that he was not making a lawful arrest since the ordinance under which he acted was allegedly unconstitutional. What we already have said disposes of both of these contentions. Fur-

---

3. A similar conclusion has been reached in cases where defendant is charged with escape and he asserts that he is entitled to release because of some claimed defect in

the case against him. State v. Hart, Mo., 411 S.W.2d 143 [10]; 27 Am.Jur.2d, Escape Prison Breaking, and Rescue, § 11, p. 856.

thermore, while the instruction did not use the exact language of the statute, it did require a finding that officer Ketcham "was actively engaged in the performance of the duties of a police officer," and this was sufficient to require a finding by the jury that the officer was performing those duties imposed on him by law. We find no merit in this assignment.

Judgment affirmed.

EAGER, J., and MEYERS, Special Judge, concur.

DONNELLY, J., not sitting.