STATE of Missouri, Respondent,

v.

Roy Curtiss JACKS, Appellant.

No. 55540.

Supreme Court of Missouri,
Division No. 2.

Dec. 14, 1970.

Rehearing Denied Feb. 8, 1971.

John C. Danforth, Atty. Gen., Charles A. Blackmar, Asst. Atty. Gen., Jefferson City, for respondent.

McQuie & Deiter, Montgomery City, for appellant.

PRITCHARD, Commissioner.

In this case appellant was charged and tried for the offense of wilfully striking, beating and injuring a deputy police officer, who was in the performance of his duties, under § 557.215, RSMo 1969, V.A.M.S. (Laws 1965, p. 668, § 1). Upon a finding of guilt the jury assessed appellant's punishment at three years imprisonment in the Department of Corrections.

It is first contended by appellant that there was not sufficient evidence for the jury to find beyond a reasonable doubt that Jewett P. Ellis, Jr. (who was alleged to have been assaulted), was a police officer within the protection of § 557.215, hence his motion for judgment of acquittal should have been sustained.

Ellis testified over objection that on July 6, 1969, the date of the alleged offense, he was employed by the City of Montgomery as a policeman or a deputy marshal. He went to work for the City of Montgomery on February 1, 1969, at a salary of $350 per month, performing the duties of a policeman. Roy A. Meyer, the Mayor of the city, identified State's Exhibits 3 and 4 which were minute records of the city council meetings on January 20, 1969 and July 7, 1969. The first purported to authorize the contact, and the hiring, of Ellis to work on the city police force at a starting salary of $350 per month. The second, by motion duly carried, increased Ellis' salary

from $350 to $400 per month. These exhibits were objected to on the ground that they were not proved up by the legal custodian (the clerk), they were not qualified under the business records act, and they were inadmissible hearsay, and these objections are a part of Point I here.

As to Ellis' testimony that he was a police officer, appellant acknowledges that City of Festus ex rel. Stolzer v. Kausler, Mo.App., 77 S.W.2d 197, 199[1], dispenses with the best evidence rule in the cases of police officers. He argues that there is a vital distinction between the cases cited (by the state) and the instant situation in that there was no valid appointment (under ordinance) or election of Ellis to the office of policeman. He says, "Absent showing the manner prescribed by ordinance for appointment of policemen and at least some effort to comply therewith, it should not be held that Ellis was even a de facto officer of the city so as to make an assault upon him punishable under Section 557.215 * * *."

The state counters with Hart v. Robinett, 5 Mo. 11. In that case plaintiff sued a constable for not returning an execution as commanded. Robinett, the plaintiff, gave oral testimony, over objection, on the trial in circuit court that Hart was a constable of the township and that Titus was deputy under him. It was said, 5 Mo. 16, "The rule requiring the best evidence to be produced is dispensed with in some particular cases. In case of all peace officers, justices of the peace, constables and others, it is sufficient to prove that they acted in these characters without producing their appointments." In State v. Holcomb, 86 Mo. 371, 377, it was held that it was not necessary to produce the official appointments of policemen and deputy marshals. "It was sufficient to show that they acted and were recognized as such officers." Under these cases, the state adduced sufficient proof that Ellis was at the time of the occurrence a police officer of the City of Montgomery, and appellant's first point

is overruled. It is not, therefore, necessary to consider whether Mayor Meyer was a legal custodian of the city's minutes, or whether there was a sufficient foundation laid for the admission of those exhibits. Such evidence is cumulative and not prejudicial. State v. Daegele, Mo., 302 S. W.2d 20, 27, 28[24].

The next contention is that Ellis, even if a police officer, was not actively engaged in the performance of duties imposed upon him by law, because when he stopped appellant's automobile he had not observed him violating any law or ordinance and had no reason to believe that he had, and Ellis' acts in stopping, detaining or arresting appellant were unlawful and not duties imposed upon him by law.

Ellis, on July 6, 1969, was working as a police officer from 1:30 p. m. until 4:00 or 5:00 a. m., or later. About 4:00 p. m. he drove by the cemetery at the edge of the city and observed a gentleman sitting by a tree. There was a 1960 Pontiac four-door there, of a dull color paint and the windows were all painted up. Its headlights were pointing out toward Highway 161. Ellis drove to the city dump, turned around and parked facing the cemetery. He watched and saw the gentleman get up from the tree, get into the car and drive around the cemetery lane then onto Highway 161 to Hickory Street where Ellis was parked. He drove on past Ellis who was in a 1968 car marked "Montgomery City Police," and which had police licenses and double red lights on top. Ellis was then in his uniform, and had a pistol, mace and handcuffs.

Ellis observed, as the man went by, that the car had California license plates, and he did not know the man. The windows were all painted up and Ellis turned around and followed him and stopped him, first honking his horn and then turning on the red lights. The man got out of his car, and when Ellis walked up to him he said, "My name is Roy Curtiss Jacks." Ellis asked him for his driver's license, and

Jacks replied that he did not have one or a registration of the vehicle, or even a bill of sale, and that he had just bought the car. Ellis asked him to come with him, turned around and started to walk back to the police car. Then, as to what happened, Ellis testified: "A. It kind of went quickly. The next thing that come to me, I was laying down on my back, face up, facing the gentleman, and he come for me and I shoved him back with my feet, and I started to get up, I got—I was on one knee and one leg stretched out—I was using my right hand for leverage to get up and then I got knocked again and this time it was over a tree stump." Ellis felt something pulling on his belt and pistol, and received blows on the back of his head and right in front of his ear. The gun was pulled out of Ellis' holster by Jacks who pointed it at him. Ellis went back to the patrol car and got a shotgun from the trunk and leveled it, at which time he saw a Mr. Carr also pointing a shotgun at Jacks. Appellant then threw the pistol in front of his car, after which Ellis handcuffed appellant and took him to the sheriff's office. As a result of the assault, Ellis had a broken jaw socket.

On cross-examination Ellis testified that when he saw appellant driving he did not know whether or not he had car registration papers, a permit, or a bill of sale to the car, and he did not observe him violating any law of the City of Montgomery. Ellis thought there was a Missouri law which says the windshield and rear windows should not be obstructed in any way. Appellant's windshield and rear window were covered over but not completely. Ellis' reason for stopping appellant was to tell him he ought to get the paint off of the windows, "to see who he was."

■ Appellant seems to take the position that the mere stopping of his car constituted an arrest. At that point there was, according to Ellis' testimony, no probable cause for an arrest. But what, under the evidence, then occurred was not an *arrest*

in the usual sense of the word. In Cornish v. State, 215 Md. 64, 137 A.2d 170, 173[5], it was said, "One is not arrested when he is approached by a police officer and merely questioned as to his identity and actions. This amounts to no more than an accosting." See also Tierney v. State, 7 Md. App. 56, 253 A.2d 528, 532[2]; Lowe v. State (D.C.3rd), 191 So.2d 303; State v. Gunter, 100 Ariz. 356, 414 P.2d 734, 737[1] (where it was said, "Defendant fails to recognize the valid distinction between an arrest on the one hand and police investigation on the other. (Citing cases.) We believe a police officer acting as a reasonable man under the circumstances may *detain and question* a person when necessary to a proper discharge of his duties."); 5 Am.Jur.2d Arrest, § 1, p. 696; 6 C.J.S. Arrest § 5, p. 583. Compare also Rodgers v. United States (C.A.8th), 362 F.2d 358, 362, cited by the state.

■ Section 85.620, RSMo 1959, V.A.M.S., provides that the marshal and policemen of cities shall be conservators of the peace, and shall be active and vigilant in the preservation of good order within the city. As stated by Ellis, his purpose in stopping appellant was to advise him to get the paint off the windows of his car, and certainly there was no other ulterior motive present in the evidence of this case. Certainly, whether the vision of the driver of an automobile was obscured by the paint on the windows would be of concern to Deputy Ellis in his official function of promoting safety within the city for "the preservation of good order" therein. It is thus clear that in stopping appellant without harassment to inquire as to the condition of his car Ellis was then (and thereafter) actively engaged in the performance of duties imposed upon him by law.

■ It was after the initial stopping of appellant that the facts came out as to his lack of a driver's license, an offense under either § 302.020 or § 302.321, RSMo 1959, V.A.M.S., which was committed in Ellis' presence. It was then that Ellis had prob-

able cause to arrest appellant as evinced in his request that appellant come with him. There can be no question but that Ellis was then (and also) actively engaged in his duties imposed by law. (He could arrest for the misdemeanor of not having a valid driver's license under § 85.610, RSMo 1959, V.A.M.S.) It is apparent, then, that appellant under the evidence was guilty of assaulting a police officer who was under the protection of § 557.215, supra.

■ For his Point III appellant says the court erred in admitting testimony and allowing, in opening statement and argument on the subject, that appellant took Ellis' pistol from him. The gist of the contention is that appellant was charged only with an assault on a peace officer, and there was no allegation that he threatened him with a pistol or used any weapon in the assault; with the conclusion that such evidence tended to prove another unrelated crime within State v. Garrison, 342 Mo. 453, 116 S.W.2d 23. As pointed out by the state, the Garrison case sets forth the exceptions to the general rule prohibiting evidence of other crimes. These exceptions are that such are admissible to establish motive, intent, absence of mistake, a common scheme or plan so that proof of one tends to establish the other, or to identify the defendant. The Garrison case goes on to hold that the evidence covering the commission of other offenses is admissible when it is so linked together in point of time that the proof of one cannot be fully shown without proving the other. Here, Ellis' pistol was taken from him during the beating administered by appellant. The act was a part of the whole transaction occurring at the same time, and was therefore admissible as being a part of the res gestae. State v. Carpenter, Mo., 436 S.W.2d 748, 752[6-8]; State v. Robb, Mo., 439 S. W.2d 510, 514[6-8].

■ Upon the subject of common assault, appellant offered Instruction No. 6. He claims error in the court's refusing that instruction because of the weakness in the state's case that Ellis was a police officer and was, at the time of the offense, actively engaged in performance of duties imposed upon him by law. As above held, and as the state contends, there was no evidence that would justify a finding that Ellis was not acting as a police officer, engaged in his duties, at the time he was assaulted. Hence the court was not required to give the instruction on common assault. State v. Watson, Mo., 364 S.W.2d 519, 522.

■ By his last point, appellant urges error in the court's failing to instruct the jury as to what duties are imposed upon a deputy marshal by law. The state's Instruction No. 2 required the finding that Ellis was a police officer actively engaged in the performance of duties imposed upon him by law. These are the words of the statute (§ 557.215, supra) and were substantially used in the information. About the same contention was presented in State v. Briggs, Mo., 435 S.W.2d 361, and was rejected. The words used clearly distinguish situations where the officer is engaged in official duties and those where he is acting in a private capacity. The contention is overruled.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.