**STATE of Missouri, Plaintiff-Respondent,**

v.

**Raymond Charles MILENTZ, Defendant-Appellant.**

**No. 35882.**

Missouri Court of Appeals,
St. Louis District,
Division Four.

March 11, 1975.

Charles D. Kitchin, Public Defender, Richard A. Knutson, James C. Jones, Asst. Public Defenders, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., K. Preston Dean III, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

NORWIN D. HOUSER, Special Judge.

Raymond Charles Milentz, convicted by a jury of striking a police officer (§ 557.-215 RSMo 1969) and sentenced to 5 years' imprisonment, appeals on the sole ground

of error in refusing to instruct the jury on the issue of self-defense.

The State's evidence discloses that appellant attacked and violently kicked a police officer while being transported to a police station, after having been arrested and subdued by several police officers. The series of events preceding the assault began with appellant driving an automobile into the rear of a police car on patrol. Officer McNail gave chase to stop the fleeing appellant, a chase which ran over an 8-block course in the City of St. Louis. During the flight appellant's car struck curbs, uprooted shrubbery, struck another automobile, hit a street light, tore out a water control box, and blew out three tires. McNail arrested appellant for leaving the scene of an accident, careless and reckless driving and on numerous traffic charges. While McNail was attempting to handcuff appellant the latter cursed the officer, took a swing at him with his free hand and kicked him in the chest. McNail wrestled appellant to the ground and succeeded in fastening the handcuffs behind appellant's back. Appellant kicked the officer again and continued kicking, so McNail lay on top of him for 4 or 5 minutes until the police cruiser arrived. Several police cars responded to McNail's call for assistance, sounded during the chase. Appellant had been drinking, and gave every appearance of the fact. He continued to shout obscenities at the police, and continued to kick at McNail. In order to control him sufficiently to transport him to the police station and not having a straitjacket it was necessary for the officers to strap him, face down, to a stretcher, which was placed in the police cruiser. Officers Kroeck and Tumbrink were assigned to accompany him to the station. They took seats on the bench in the back of the cruiser. Officer Kroeck offered to unstrap appellant and let him sit up if he would give no further trouble. Appellant promised to behave. Allowed to sit on the bench, between the two officers, appellant continued to shout and use obscenities. He called the police "pigs" and said they were giving him a "bum rap." As they proceeded toward the station he became more belligerent and hostile, at first directing his cursing at all police in general, later aiming his abuse more at Officer Tumbrink. Appellant and Tumbrink had never met before. Appellant used foul language, cursed and spit upon the two officers. Then he gave Tumbrink a short kick in the area near his gun and holster. Tumbrink put his hand on appellant's leg, evidently to prevent more kicking, warned him to desist and told him not to hold it against Tumbrink, reasoning with appellant by telling him that Tumbrink had nothing to do with it, and advising him to just sit there and keep calm until they got to the station. Appellant told Tumbrink "what [he] could do and where to go," and then appellant drew back his right leg and kicked Tumbrink in the groin. Tumbrink fell forward and appellant caught him with another kick in the soft tissue of the lower abdomen. This knocked the wind out of Tumbrink, who doubled over, falling upon appellant's leg and holding on to prevent further kicking. Kroeck grabbed appellant, threw him to the floor, and for the rest of the trip to the station (about two blocks) Kroeck laid on top of appellant and Tumbrink held his legs down. Appellant continued kicking and berating the officers. The entire trip took 4–5 minutes. Appellant was not struck by any of the officers, either during the arrest or during the trip to the station. Tumbrink was treated at a hospital for contusions and severe pains in the lower abdomen. As a result of the kicking he lost a total of 25 days from his work.

Appellant did not take the stand and testify. He claims the right to a self-defense instruction on the basis of the testimony of three witnesses: Frenchette Atkins, driver of the second car with which appellant's car collided; appellant's mother, and appellant's wife. Review of their testimony demonstrates that none of them testified to anything faintly resembling evidence of self-defense. None of the three was present inside the cruiser, where the assault took place. Their testimony was con-

fined to immaterial matters and events which occurred at the scene of the arrest, prior to the time appellant was placed in the cruiser. Witness Atkins saw no fight; saw no one on the ground; saw no blows struck. She heard appellant yelling when she was a block and a half distant. At the scene she merely saw appellant leaning against his car. Appellant's wife saw him leaning against his car. He was not on the ground when she saw him. He was still strapped to the stretcher when the cruiser door was closed; she did not see him sitting up inside the cruiser. (From this appellant suggests that therefore "appellant may not have been in a position to initiate the attack.") Appellant's mother testified that when she saw appellant at the hospital his face and clothes were bloody; that his shirt was bloody and had been torn off; that his face was swollen, red and puffy; that he had cuts and abrasions over his face and head. When she saw him next day he had two black eyes.

 Appellant claims that self-defense requires only a belief in imminent harm and not an actual attack; that it was not necessary for appellant to wait for the officers to attack first; that the evidence was sufficient to engender in appellant's mind the fear of an attack, and that "[t]he self-defense theory is a possible explanation of the incident."

Appellant's claim to the right of self-defense is fatuous to say the least. There is no evidence that any blows were struck by the police or that appellant was manhandled in any way at the scene of the arrest, other than was necessary to restrain appellant's violent antics and place him under arrest. The assault charged to appellant occurred in the police cruiser, on the way to the police station, but there is a complete absence of evidence that any of the blows and kicks administered by appellant to Officer Tumbrink in the cruiser were preceded by any threats, feints, blows or physical or mental abuse by Officer Tumbrink, or by Officer Kroeck. All of the evidence is to the contrary. With respect to the bloody condition of appellant's face and clothes and the cuts, abrasions, black eyes, etc. observed at the hospital, there is evidence that there were some abrasions on his face *before* he entered the police cruiser; that his nose or cheek "had a scrape" which "could have been from the concrete"; that he had a "scrape on his forehead like if you skinned your knee" and a bloody nose *when he entered* the van. In view of the violent resistance he offered it is reasonable to conclude that appellant received these marks in the course of actions which the police were of necessity obliged to take to subdue and arrest appellant and to get him into the police cruiser. The significant fact is that there is no evidence that they resulted from physical abuse of appellant while being transported to the station. This record discloses the case of an intoxicated, distraught, hostile, belligerent, violent and dangerous man on a rampage; a man who had been previously convicted and served time for striking an officer, who hates the police, and who expressed his contempt for the police by every vocal and physical means at his disposal, including expectorating upon them; a vengeful person making an unprovoked attack upon an officer who had given appellant no reason to act as he did.

The only self-defense in this case is that which the officers of the law were forced to employ to protect themselves from the maniacal conduct of appellant, and there was no error in refusing to instruct the jury with respect to appellant's claimed right of self-defense.

Judgment affirmed.

SMITH, C. J., and ALDEN A. STOCKARD, Special Judge, concur.