**STATE of Missouri, Respondent,**

v.

**Thomas Edward NUNES, Appellant.**

**No. KCD 28340.**

Missouri Court of Appeals,
Kansas City District.

Jan. 31, 1977.

William G. Mays, II, Public Defender, Columbia, for appellant.

John C. Danforth, Atty. Gen., W. Mitchell Elliott, Asst. Atty. Gen., Jefferson City, for respondent.

Before Shangler, P. J., and SWOFFORD and SOMERVILLE, JJ.

SHANGLER, Presiding Judge.

The defendant Nunes was found guilty of three counts of striking a police officer engaged in the performance of his duties and was sentenced to serve concurrent sentences of three years on each count. On this appeal he contends the trial court erred in the refusal of his proffered instructions on (1) self-defense and (2) resisting arrest as a lesser included offense.

The evidence favorable to the conviction shows: The offenses for which Nunes was convicted resulted when three members of the Columbia Police Department—Officers Lake, Purdy and Taylor—intervened to quell a brawl between Nunes and Dority, night manager of the IGA store. The incident began on the parking lot of the store where Dority was helping a customer unload groceries into her car when, according to Dority, Nunes approached him with loud obscenities, then shoved him and hit him as Dority fell. [Nunes had been excluded from the IGA store by Dority some months earlier after his female companion had been caught shoplifting.] Dority retaliated by fisticuffs upon Nunes and the fray continued until the police arrived five minutes later. Officer Purdy was the first to come on the scene, then Lake and then Taylor. By the time the police arrived, Dority had gained the advantage over Nunes and had him pinned to the ground. The testimony conflicts as to what happened next, but it is clear that a struggle ensued between Nunes and the police as they tried to reduce him with handcuffs, and subdued him only after Officer Taylor struck Nunes once on the head with his nightstick. When the police arrived, Dority promptly responded to their commands to stop the fight, but Nunes

continued to flail wildly, first at Dority and then at the police. The defendant continued his resistance even after he was handcuffed and placed in the police car, and was finally sprayed with mace to make him calm.

The defendant admits that Dority hit him only after he had first struck Dority. He does dispute the evidence of the prosecution as to what happened after the police arrived. The version given by Dority—corroborated by the testimony of Officers Purdy and Lake as well as witnesses Johnson and Heuer—was that he stopped fighting in response to the police direction and as he disengaged, Nunes struck out at one officer, then fought and kicked both Purdy and Lake as they tried to handcuff him. Betty Heuer, the customer Dority attended at the time of the incident, testified that when the police arrived, Dority relented his hold on Nunes, but the defendant was in a frenzy, cursing, hitting and fighting them all. The officers testified that Dority responded to their intervention, but Nunes pulled them to the ground, fought and kicked them, all without physical retaliation from them except to try to pin his arms to handcuff him. In the course of this attempt, Nunes fell against a car antenna, snapped it off, and began to swing it at them.

The defendant disagrees with this account of the incident. His testimony was that immediately upon their arrival the police grabbed him although Dority was still striking him as he got up. He could not see well and did not realize until later that the men were police officers, nor that they were trying to arrest him. [All three officers were uniformed and arrived in marked police cars. Officer Lake had no chance to tell Nunes he was under arrest and Officer Purdy did not intend to arrest at first.] Nunes did not remember striking at the officers with the car antenna nor whether his hands came into contact with the officers, but did admit that his feet came in touch with a police officer. It was his contention that he did not intentionally strike or swing at any police officer, and that his purpose in grappling with them

was to protect himself from harm from them. He said that the first police officer at the scene grabbed him and continued to beat him even after one handcuff had been placed on him. He concluded that testimony with the statement that he thought the police might inflict serious harm on him. That concern arose from previous encounters with the police, including one incident where an Officer Cunningham had caught his hand in a rat trap which Nunes had placed under the front seat of his car, as a result of which he was threatened by Cunningham. Officers Purdy and Lake both testified that they were aware of that incident and had stopped Nunes previously for traffic violations. The testimony of the defendant himself disclosed a series of convictions for traffic charges and other more serious offenses over the past twenty years. Less than a year before, he was convicted for the assault on a police officer.

To revert to the actual fight—a third city officer, Taylor, saw Purdy and Lake struggling with defendant, and went to their assistance. When he tried to secure defendant around the neck, Nunes bit his hand and drew blood. Taylor struck Nunes once on the head with his nightstick and the other officers were then finally able to handcuff the defendant. Even then, Nunes kicked Lake in the leg, and the defendant continued to kick, struggle and curse as the officers attempted to place him in the patrol car. When in the car he continued to resist and tried to open the door. It was at that time that Officer Purdy sprayed mace on him and he was made calm. Nunes shouted profanities all the way to the station and after he was placed in a cell he spit upon Purdy. Nunes admitted to that.

At the close of the evidence the court refused the instruction proffered by defendant in the modified form of MAI–Cr 2.40 which directs an acquittal on the theory of lawful self-defense. The trial judge refused the submission on the authority of *State v. Briggs*, 435 S.W.2d 361 (Mo.1968) which denied the right to resist an arrest even under a law which is later found unconstitutional. The defendant argues here that

*Briggs* does not concern the issue of self-defense but resistance to arrest, and contends that under the evidence his tendered instruction was properly submissible.

■■■ It is evident that the trial court confounded two disparate issues—self-defense and resistance to arrest. *Briggs* merely departs from the common law rule which allows resistance to an unlawful arrest by the use of reasonable force and overcomes the impact of such cases as *Kansas City v. Mathis*, 409 S.W.2d 280 (Mo.App. 1960) and *State v. Messley*, 366 S.W.2d 390 (Mo.1963) which followed the previous authority. *Briggs* means [l. c. 365] that a citizen may not use force to resist any arrest, lawful or unlawful, for such self-help tends to intolerable disorder. The right of self-defense expresses a different principle and permits reasonable resistance to excessive force of the officer to protect the bodily integrity of the citizen. In such case, however, [Restatement of Torts, Second, § 65, comment f]:

> .  .  .  . the [citizen] may defend himself by the use of such force, not because its use is necessary to protect him from the unlawful arrest, but because it is the only way in which he can protect himself from death or serious bodily harm.

Therefore, the rationale which denies resistance to unlawful arrest does not determine the right to resist excessive force.[1]

The jurisdictions which have abrogated the common law right to resist an unlawful arrest recognize that the right of self-defense against excessive force in the arrest remains unimpaired. *State v. Ramsdell*, 109 R.I. 320, 285 A.2d 399 (1971); *People v. Curtis*, 70 Cal.2d 347, 74 Cal.Rptr. 713, 450 P.2d 33 (1969); *State v. Mulvihill*, 57 N.J. 151, 270 A.2d 277 (1970); *Gray v. State*, 463 P.2d 897 (Alaska 1970), and generally, 44 A.L.R.3d 1079, 1087, Annotation: Illegal Arrest—Right to Resist. These authorities

each hold that although a citizen has no right to resist an arrest, the privilege of self-defense against excessive force in the arrest remains. The pragmatic rationale of this privilege recognizes that although liberty can be restored through legal process, life and limb cannot be repaired in a courtroom. *People v. Curtis, supra*, 74 Cal.Rptr. l. c. 719, 450 P.2d l. c. 39. The historical rationale for the abrogation of the common law right to resist unlawful arrest is given in *City of Columbus v. Fraley*, 41 Ohio St.2d 173, 324 N.E.2d 735 l. c. 739 (1975):

> Since 1709, when the doctrine was pronounced in *The Queen v. Tooley* (1709), 2 Ld.Raym. 1296, 92 Eng.Rep. 349, society has changed drastically. Nations once rural and agrarian have become urban and industrialized. Policemen who once employed staves and swords to effect arrests now use guns and sophisticated weapons. The era "when most arrests were made by private citizens, when bail for felonies was usually unattainable, and when years might pass before the royal judges arrived for a jail delivery," is past. .  .  . Modern-day defendants reap the benefits of "liberal bonding policies, appointed counsel in the case of indigency, and the opportunity to be taken before a magistrate for immediate arraignment and preliminary hearing."

Considerations of this type have prompted both courts and legislatures to look anew at, and often abandon, the common law rule. .  .  .

■■■ Thus, the contemporary authorities—which *Briggs* now joins—hold that while a person may not use force to resist an arrest, he may use reasonable force to defend life and limb against excessive force. The reasonableness of the force used and the right of self-defense are in each case for the trier of fact to decide. *State v. Ramsdell* (R.I.), *supra*, and *People v. Curtis* (Cal.)

---

1.  The Model Penal Code, § 3.04, provides: "(2)(a) The use of force is not justifiable  .  .  . (i) to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful  .  .  .  .  . (ii) except that this limitation shall not apply if:  .  .  . (3) the actor believes that such force is necessary to protect himself against death or serious bodily harm." See, also, Fisher, Laws of Arrest, § 138; 5 Am.Jur.2d, Arrest, § 94, p. 779; Uniform Arrest Act, § 5.

*supra.* The right of an arrestee to self-defense does not arise when the arrestee creates a situation so "fraught with peril" as to invite the use of force to subdue it. *Gray v. State, supra,* l. c. 910 (Alaska). Also, the arrestee forfeits the right to self-defense if he knows that if he desists from physical resistance and submits to arrest, the excessive force of the officer will cease—but does not conform his conduct to that knowledge. *State v. Mulvihill, supra,* l. c. 280[5, 6] (N.J.). This qualification is expressed in the comments to § 3.04 of Model Penal Code, which denies self-defensive force to an arrestee who "knows that he is in no peril greater than arrest if he submits to the assertion of authority".

■ These principles are compatible with the developed law of this state. A police officer is authorized to use all necessary force to effect the arrest if the arrestee flees or forcibly resists after notification that the officer intends to arrest. § 544.190, RSMo 1969.[2] He may use only the force he reasonably believes necessary [*State v. Nolan,* 354 Mo. 980, 192 S.W.2d 1016, 1020[7–9] (1946)] and while the use of unreasonable force may not void the arrest, it may subject the officer to civil or criminal liability. *City of Gallatin ex rel. Dixon v. Murphy,* 217 S.W.2d 400, 403[1–4] (Mo. App.1949); Scurlock, Basic Principles of the Administration of Criminal Justice, 41 UMKC L.Rev. 167, 189 (1972).

■ The law expects an officer in making an arrest to be the aggressor and imposes the duty to press forward to overcome all resistance to bring the arrestee under physical restraint. *State v. Ford,* 344 Mo. 1219, 130 S.W.2d 635, 638 (1939). An officer need not engage felons on equal terms or put off the arrest until a more favorable time, but is expected to accomplish the arrest by the use of force co-extensive with his duty. *State v. Dierberger,* 96 Mo. 666, 10 S.W. 168, 170 (1888); Scurlock, Arrest in Missouri, 29 U.K.C. Law Rev. 117, 217 (1961). The requirement of § 544.190 that the force used to accomplish the arrest or prevent escape must be reasonably necessary for the purpose becomes a determination of objective fact under the circumstances. *State ex rel. and to Use of Donelon v. Deuser,* 345 Mo. 628, 134 S.W.2d 132, 135[2, 3] (1939); *City of Gallatin v. Murphy, supra,* l. c. 403[1–4].

There are statements in the Missouri law which recognized the right of an arrestee to resist the use of excessive force by an officer to accomplish arrest, but only to the extent of the excess. *State v. Banks,* 258 Mo. 479, 167 S.W. 505 (1914) considered the contention that it was error to refuse the self-defense instruction that if defendant knew the deceased was a police officer, yet he had the right to shoot him, if the officer used unnecessary force to arrest and gave the defendant good reason to believe he was about to be killed or suffer great bodily harm. The court acknowledged the instruction was a correct statement of the law and cited the general rule from Wharton on Homicide (3rd Ed.) § 401, p. 621:

An officer seeking to make an arrest may only use such force as is reasonably necessary to subject the person sought to be arrested to his authority; and, where he goes further, and uses unnecessary force, the rule applicable to a private individual

**2.** §§ 544.190 and 559.040 [which justifies a homicide committed in the apprehension of any person for any felony committed] were held unconstitutional by a 4 to 3 decision of the United States Court of Appeals, 8th Circuit, in *Mattis v. Schnarr,* 547 F.2d 1007, p. 1020, adopted December 1, 1976, to the extent those sections "permit police officers to use deadly force to apprehend a fleeing felon who has used no violence in the commission of the felony and who does not threaten the lives of either the arresting officers or others". That holding does not bind us here for state courts are controlled by the supreme law of the land as declared by the United States Supreme Court, and not by the general announcements of law made by lower federal courts. *Kraus v. Board of Education of City of Jennings,* 492 S.W.2d 783, 784[2] (Mo.1973). In the absence of decision of the United States Supreme Court, we are bound to follow the controlling decisions of the Missouri Supreme Court. *Valentine v. State,* 541 S.W.2d 558 [Mo. banc adopted October 12, 1976]. Furthermore, the present case does not involve the use of deadly force against a fleeing felon, the conduct condemned in the circumstances of *Mattis.*

attacked by another, that, if a person believes, or has reason to believe, that he is in danger of receiving great bodily harm, he may defend himself to a reasonable extent, applies. . . . A person sought to be arrested may oppose a felonious aggression in the execution of the arrest, even to slaying the officer when necessary to save his own life, or to save *himself from serious bodily harm.*

However, because the defendant had based his defense on testimony that he did not know the deceased was a police officer, the instruction was not warranted; but [l. c. 508]:

[i]n a proper case, where the evidence showed that the defendant knew the aggressor was an officer attempting to arrest him, and that the officer used unnecessary force in so doing, and that defendant believed, and had good reason to believe, that he was about to be killed, *or about to receive great bodily injury by reason of such unnecessary force,* and shot to defend himself against such unnecessary force, such an instruction would be proper, but where, as here, there is no such evidence, but, on the other hand, the entire defense is based upon the theory that defendant *did not know* the aggressor was an officer attempting to arrest him, the evidence does not justify the giving of such an instruction.

See also, *State v. Ross,* 492 S.W.2d 792, 794[1] (Mo.1973); *City of St. Louis v. Treece,* 502 S.W.2d 432, 435 (Mo.App.1974); *State v. Milentz,* 521 S.W.2d 1, 3 (Mo.App. 1975).

■ This right of self-defense, it must be understood, does not resist the arrest but the excessive force. Therefore, self-defense is not available to the arrestee *who uses more force for self-protection than reasonably appears to be necessary.* As corollary, an arrestee who provokes the use of force against him may not excuse his resistance by self-defense. Wharton's Criminal Law (Anderson) (1957) states [§ 216, p. 475]:

When a man puts himself in a state of resistance and openly defies the officers

of the law, he is not allowed to take advantage of his own wrong, if his life is thereby endangered, and set up the excuse of self-defense.

The Model Penal Code, § 3.04(2)(b)(ii) does not justify the use of deadly force "if the actor, with the purpose of causing death or serious bodily harm, provoked the use of force against himself in the same encounter". This qualification is compatible with Missouri authorities in assault cases which hold that an aggressor may not invoke self-defense to justify the injury to the other. *State v. Spencer,* 307 S.W.2d 440, 443[2, 3] (Mo.1957); *Lehman v. Lambert,* 329 Mo. 1147, 49 S.W.2d 65, 68[6] (1932).

■ Any substantial evidence of self-defense—even from the defendant alone—requires instruction on the issue to the jury as part of the law of the case. *State v. Spencer, supra,* l. c. 443; *State v. Robinson,* 182 S.W. 113[1–2] (Mo.App.1916).

■ These authorities yield the rule that arrestee becomes entitled to an instruction on self-defense where there is substantial evidence of excessive force by the police officer in circumstances where the use of such force was not provoked by the arrestee. Accordingly, as a matter of law, the refusal by the trial court to instruct on self-defense was proper.

■ It comes from the defendant himself that he started the imbroglio and never relented. He hurled the first epithet, he struck the first blow, and after Dority retaliated and the police intervened, he continued his assault wildly against all of them. The defendant asserts that he did not provoke the use of force by the police, but that they simply began to beat him and that he retaliated for fear that they would cause him unnecessary bodily harm. These contentions contradict the evidence by the State that Nunes never abated his assault, first against Dority and then against the officers; but what remains conceded even by the defendant is that he was the aggressor and that in the course of this aggression struck at least one of the officers with his leg. *The defendant explains his resistance*

by his fear that the officers harbored a grudge against him from prior encounters, yet contends at the same time he was not at first aware Purdy and Lake were officers. That does not explain, however, why Nunes continued to resist when he finally discovered their identities. It is not disputed that each of the three officers—Purdy, Lake and Taylor—were in proper uniform and arrived in marked cars. Nor does Nunes contend the officers were not in performance of their duties under § 557.215. [In fact, when the police arrived Nunes was engaged in activities which amounted to, among other things, a breach of the peace [§ 562.240] and a common assault [§ 559.220]. The officers were required by law [§ 85.620] to conserve good order and quell the fight. See e. g. *State v. Jacks*, 462 S.W.2d 744, 747[4] (Mo.1970).] Therefore, even though the officers when they came upon the scene did not intend at first to arrest anyone, they were engaged in the performance of official duties at the time of the assault. *State v. Brothers*, 445 S.W.2d 308, 310[1, 2] (Mo.1969).

If, as Nunes contends, he was not aware of their identity as officers when first Purdy and then the others intervened, then his resistance was not against the unnecessary force of a police officer and no submission for self-defense is proved. *State v. Banks, supra*, l. c. 508. If, as he also contends, he learned their official identity during the fracas, it was his duty to submit to their reasonable methods of arrest. It is evident in any event with any effort Nunes could easily have learned that the men who intervened were police officers, and he is held to that knowledge and the consequent duty to submit. *Williams v. State*, 311 N.E.2d 619, 621[4] (Ind.App.1974). The defendant was the aggressor throughout the entire encounter; even after he was subdued and placed in the police car, he fought to escape the arrest, and then in jail he spat upon the police. Beyond that, there was no evidence—even to the blow on the head by Taylor with the truncheon—that any of the force used by the police was other than reasonable and consistent with their duty to maintain the peace and overcome resistance to arrest. The self-defense submission was properly refused.

■ The other point on appeal contends error for failure to submit instructions patterned on § 557.210 which would have allowed the jury to find Nunes guilty of the misdemeanor of resisting process, other than for felonies, if the jury find:

First, that Nunes knowingly and wilfully did obstruct, resist or oppose the officer, and

Second, that the officer was engaged in the discharge of an official duty, and

Third, that the arrest was for an offense other than a felony.

The defendant cites the general test from *State v. Amsden*, 299 S.W.2d 498, 504 (Mo. 1957) that if the greater of the two offenses includes all the legal and factual elements of the lesser, the greater includes the lesser for his argument that the misdemeanor, resisting process other than for felonies, is necessarily included within the felony of striking a police officer in the performance of his duties. Accordingly, the argument continues, the court was required to submit the instruction offered by defendant.

This argument fails because there was no evidence to justify submission of the misdemeanor, resisting process other than for felonies. In *State v. Taylor*, 498 S.W.2d 614 (Mo.App.1973) and *State v. Ross*, 492 S.W.2d 792 (Mo.1973) the court construed § 557.215 [under which Nunes was charged and convicted] to be directed at all willful assaults on police officers, and ruled that there was no lesser included offense where a striking is shown and no controversy appears over whether the victim was a police officer or engaged in the performance of his duties. That was the state of facts before the trial court and hence an instruction on a misdemeanor [in that case, common assault] was not appropriate. (498 S.W.2d at 617). In *State v. Ross, supra*, [l. c. 794] the court found the evidence did not warrant a common assault instruction [even if otherwise valid] where it was clear the officer was struck while engaged in the performance of his duties and used no ex-

cessive force. See also, *State v. Jacks, supra* [l. c. 747].

In the present case, the uncontroverted evidence showed at least that Nunes kicked the officers. The witnesses, other than the defendant himself, all described a continuous episode of assaults on the officers by flailing, spitting, biting and wrestling. Nor is there genuine doubt Nunes was aware that his victims were officers engaged in the performance of their duties.

It may be arguable that § 557.210 applies to misdemeanor arrests without warrants [*Kansas City v. LaRose*, 524 S.W.2d 112 (Mo. banc 1975) but the fact remains that the Legislature, by enactment of § 557.215 intends to treat the striking of an officer as a distinct and far more serious offense than the mere obstruction of an officer in the discharge of duty in any case other than a felony. Since the evidence is undisputed that Nunes struck an officer in the performance of an official duty, the trial court properly refused to submit the misdemeanor of resisting process, other than for a felony, as requested by defendant.

The judgment is affirmed.

All concur.