**STATE of Missouri, Respondent,**

v.

**Jerry HERNANDEZ, Appellant.**

**No. WD 33547.**

Missouri Court of Appeals,
Western District.

April 26, 1983.

188

Henri J. Watson, Kansas City, for appellant.

Larry A. Schaffer, Asst. Pros. Atty., Kansas City, for respondent.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

NUGENT, Presiding Judge.

Defendant appeals his conviction for resisting arrest in violation of § 575.150 [1] on the ground that the trial court erred in refusing to instruct the jury on self-defense. We affirm.

On April 10, 1981, shortly after 10:30 p.m., Kansas City police officers Divilbliss and Duer were dispatched to the vicinity of the 2700 block of Belleview, Kansas City, Missouri, because of a disturbance in the street in which shots had been fired. Officer Divilbliss drove a marked police car and Officer Duer drove a paddy wagon. Both men were in uniform.

Approximately twenty-five people were standing in the street as the officers arrived. Officer Duer stepped out of the paddy wagon and was approached by the defendant who had a beer in his hand, appeared intoxicated, and asked the officer who had called the police. Officer Duer

replied that he did not know. Mr. Hernandez then told the men, "We don't need you here. You can go ahead and get out."

According to the officers, the defendant was then told to go inside with his beer or he would be arrested. He refused. On being warned again, defendant said he did not care whether he was arrested or not. Officer Divilbliss then told him he was under arrest for drinking in public.

Both officers later testified that they walked with the defendant to the back of the paddy wagon, told him to stand facing the wagon, and started to pat him down. According to Officer Duer, the defendant suddenly turned, pushed him backwards, and ran. He pursued the defendant, caught him at the front of the wagon and swung his nightstick. Although he was not sure whether he hit him, the defendant fell.

The testimony of officers Divilbliss and Duer indicated that a chaotic and tension-filled free-for-all followed. While on the ground, the defendant kicked the officers and prevented them from handcuffing him. Officer Duer hit the defendant repeatedly with his nightstick. The crowd moved in, jumping on the officers, shouting, and eventually pulling the defendant free of Officer Duer. Although Mr. Hernandez ran away, the officers caught up with him again at the door to his parents' home where Officer Divilbliss was hit on the head. Officer Duer grabbed the defendant, fell through the doorway into the house, and continued to hit him with a nightstick while Mr. Hernandez struggled and kicked. Several people began jumping on Officer Duer and an unknown party stabbed him in the side. Finally, he drew his revolver, ordered everyone off him, and hit the defendant with the revolver three times until Mr. Hernandez let him go. Assistance arrived and both officers and the defendant were taken to the hospital for treatment.

Testimony by defense witnesses painted a somewhat different picture. Although one neighbor did recall that Mr. Hernandez told the officers that they were not needed, no

1. All sectional references are to Revised Statutes of Missouri, 1978.

one heard either officer tell him he was under arrest. Similarly, no one saw any interaction between defendant and the officers *behind* the paddy wagon, but saw only the altercation at the *front* of the wagon in which Officer Duer was hitting Mr. Hernandez with a nightstick.

In addition, the defense witnesses testified that the defendant was being beaten unmercifully and that the crowd was trying to save his life. One of defendant's brothers testified that contrary to the officers' testimony, defendant did not run from the front of the paddy wagon, but was pulled and crawled away in a semi-conscious state. According to the witness, Mr. Hernandez' head "was mangled" and "looked like [it] went through a hamburger grinder."

The defendant himself testified that he could not recall anything which occurred and so could neither deny nor affirm any of the testimony.

At trial, MAI–CR2d 29.60.1 was submitted as follows:

> If you find and believe from the evidence beyond a reasonable doubt:
> First, that on April 10, 1981 in the County of Jackson, State of Missouri, Dennis Duer and Roderick Divilbliss were law enforcement officers, and were making an arrest of the defendant for drinking in public, and
> Second, that the defendant knew one or more law enforcement officers were making an arrest of the defendant, and
> Third, that for the purpose of preventing the officers from effecting the arrest, the defendant resisted the arrest by fleeing from the officers,

then you will find the defendant guilty of resisting arrest. Defense counsel requested an instruction on self-defense based on MAI–CR2d 2.41.1 which does not appear in the legal file but which is set out in appellant's brief. The court refused it as not being appropriate to the case.

The jury found the defendant guilty and assessed a $200 fine.

On appeal, defendant argues only that the trial court erred in refusing the self-defense instruction.

■ In sorting out the facts in this case, we must accept the jury's determination of the facts based on conflicting evidence. *State v. Keck,* 389 S.W.2d 816 (Mo.1965). We may neither weigh the evidence nor determine the credibility of the witnesses. *State v. Williams,* 376 S.W.2d 133 (Mo.1964). Consistent with the jury's verdict based on MAI–CR2d 29.60.1, then, we must accept that the officers did indeed arrest defendant for drinking in public, that the defendant knew he was being arrested, and that to prevent the arrest, the defendant resisted by fleeing. This verdict means, of course, that the jury chose to believe the officers' statements as to the activities behind the paddy wagon—the arrest and flight—rather than defense witnesses' statements that no arrest was made.

■ We note in addition, however, that in examining the record for evidence supporting the theory of self-defense, we must consider the evidence in the light most favorable to defendant. *State v. Thomas,* 625 S.W.2d 115, 122 (Mo.1981). Doing so, we accept as true defense witnesses' testimony that once the defendant was apprehended at the front of the paddy wagon, he offered no further resistance but was nevertheless beaten repeatedly by the officers, crawling away only to save himself.

■ Unfortunately, accepting all of defendant's evidence on self-defense does not benefit his cause. Self-defense is simply not a defense to resisting arrest.

Although Missouri once recognized that a person was entitled to resist arrest with as much force as necessary to prevent the arrest if the officer was acting unlawfully, and that in such cases the failure to give a self-defense instruction was reversible error, *State v. Browers,* 356 Mo. 1195, 205 S.W.2d 721, 722–23 (1947), that is no longer the state of the law. As held in *State v. Thomas, supra,* at 121, "an arrestee no longer enjoy[s] a right to resist an unlawful arrest by a known police officer." This is true even if the officer acts without probable cause or if the law which defendant was

arrested for violating is later found to be unconstitutional. *Id.*

■ Although the bar to resistance to arrest rests on the principle that "self-help tends to intolerable disorder," *State v. Nunes,* 546 S.W.2d 759, 762 (Mo.App.1977), a right to self-defense is still recognized when a public officer uses excessive force. As stated in Restatement (Second) of Torts § 65 comment f (1977), and cited with approval by this court in *State v. Nunes, supra,* at 762, "the [citizen] may defend himself by the use of such force, not because its use is necessary to protect him from the unlawful arrest, but because it is the only way in which he can protect himself from death or serious bodily harm." The reason given for the recognition of this privilege is that "although liberty can be restored through legal process, life and limb cannot be repaired in a courtroom." *Id.* at 762.

This recognition of the right to defend oneself against excessive force and the denial of the right to resist arrest may seem, at first blush, contradictory. They are not. The cases which recognize the right of self-defense are cases in which the defendant has been charged not with resisting arrest, but with using force against a police officer, either in the nature of an assault or homicide. In *State v. Nunes, supra,* the defendant was charged with striking three police officers attempting to break up a fight, and it was in regard to that charge that Judge Shangler stated at 764 that "[a]ny substantial evidence of self-defense ... requires instruction on the issue to the jury ...." In *State v. Thomas, supra,* defendant was charged with capital murder in the slaying of a police officer and in that context, the propriety of the self-defense instruction was considered. *See also State v. Martin,* 591 S.W.2d 731 (Mo.App.1979), an assault case in which the court recognized that the instruction may be appropriate when the evidence favorable to defendant so warrants. We find no Missouri case recognizing that such an instruction may be appropriate when the defendant is charged with resisting arrest, as opposed to assault or homicide.

Any perceived contradictions, then, must be resolved as follows. Although a citizen may not resist arrest either by flight or force, he may defend himself if excessive force is used. If he does so and is later charged with assault or homicide, he may be entitled to a self-defense instruction if the evidence warrants it. If he is charged only with resisting arrest, the unreasonable force will not void the arrest, and the self-defense instruction is, therefore, inappropriate. We are not faced with the question of whether any other remedy is available to a citizen such as Mr. Hernandez in the latter situation and, therefore, we need not address the issue. But for a discussion of such remedies, *see State v. Nunes, supra,* at 763–64; *City of Gallatin ex rel. Dixon v. Murphy,* 217. S.W.2d 400, 403 (Mo.App.1949); Scurlock, *Basic Principles of the Administration of Criminal Justice with Particular Reference to Missouri Law,* 41 UMKC L.Rev. 165, 190 (1972). *See also Walsh v. Oehlert,* 508 S.W.2d 222 (Mo.App.1974).

■ Here, then, where Mr. Hernandez was charged not with assault, to which self-defense may be a valid defense, but with resisting arrest, he was not entitled to a self-defense instruction even though evidence of force was presented.

For the foregoing reasons, we affirm the defendant's conviction for resisting arrest.

All concur.