**STATE of Missouri, Plaintiff–Respondent,**

v.

**Lonnie W. LAWSON, Defendant–Appellant.**

**No. 24732.**

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 17, 2002.

Ellen H. Flottman, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, for Respondent.

PHILLIP R. GARRISON, Judge.

Lonnie W. Lawson ("Defendant") was convicted by a jury of the class D felony of driving while intoxicated, in violation of Section 577.010,[1] for which he was sentenced, as a prior and persistent offender, to five years imprisonment. Defendant appeals, claiming that the evidence was insufficient to support a verdict of guilty. We disagree. The judgment of the trial court is affirmed.

In cases where a defendant challenges the sufficiency of the evidence supporting his conviction, our review is "limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc), *cert. denied*, 525 U.S. 1021, 119 S.Ct. 551, 142 L.Ed.2d 458 (1998) (quoting *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc), *cert. denied*, 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993)). Evidence favorable to the verdict is accepted as true, as are reasonable inferences therefrom, while contrary evidence and inferences are disregarded. *Grim* at 405. "[W]e do not weigh the evidence but only determine whether there was substantial evidence to support the jury verdict." *State v. Morris*, 41 S.W.3d 494, 497 (Mo.App. E.D.2000). With the foregoing in mind, the evidence reveals the following:

On the evening of November 21, 2000, Defendant and his girlfriend, Linda McBee, left the home of Terri Reiesner, McBee's daughter, for Defendant's appearance before a municipal court in Carterville, Missouri. Prior to leaving, McBee asked Reiesner for money with which to purchase alcohol. Sometime after the municipal court proceedings began at 6:00 P.M., Officer James Beezley ("Beezley"),

of the Carterville Police Department, noticed Defendant as he waited for his court appearance. Beezley smelled a strong odor of alcohol coming from Defendant from a distance of five to ten feet. Beezley testified he had extensive training and experience in detecting the signs of intoxication.

At approximately 7:00 p.m. the same evening, Officer Dennis Cornell ("Cornell"), also of the Carterville Police Department, responded to a radio call concerning Defendant, who police dispatch said had been involved in an earlier altercation. Cornell, like Beezley, testified to having extensive training and experience in detecting intoxication and incidents of driving while intoxicated. After intercepting Defendant's red Pontiac, Cornell saw it cross the center line of the road into the other lane of traffic several times. Defendant did not respond when Cornell turned his emergency lights on, stopping his car only after Cornell turned on his siren.

Defendant immediately got out of the car and met Cornell at the front of his police car. Cornell noticed that Defendant was staggering and swaying as he approached the car. Defendant told Cornell that he had been in municipal court, and admitted an earlier altercation had occurred between the woman with him and another man. Cornell noticed a strong odor of alcohol on Defendant's breath, and that Defendant's speech was slurred. Cornell asked him if he had consumed any alcohol, to which Defendant responded that he had consumed two glasses of wine with dinner. Cornell believed Defendant was impaired and had been driving under the influence of alcohol, and he attempted to administer the first of three standard field sobriety tests, the horizontal gaze nystagmus test. Cornell was unable to

---

1. All references to statutes are to RSMo (2000) unless otherwise indicated.

complete this test because Defendant was uncooperative. Cornell checked Defendant's driver's license with police dispatch and discovered it was revoked, with a possible arrest warrant pending in Joplin, Missouri. Defendant became insulting and aggressive and Cornell took him into custody. Cornell searched Defendant's car and found seven unopened beer cans in a plastic sack behind the driver's seat, and a half-full 750 milliliter bottle of Mad Dog 20/20, an intoxicating beverage. Cornell was called away from the scene to testify in court and turned Defendant over to Beezley, who had been summoned to the scene as back-up for Cornell.

Beezley noticed the smell of alcohol on Defendant, as he had earlier in the evening during the municipal court proceedings. Beezley took Defendant to the police station to finish the field sobriety testing begun by Cornell at the scene. Upon arriving at the station, Beezley administered the one-legged stand test, in which Defendant was required to stand with one leg six inches off the ground for thirty seconds without putting his foot down more than twice. Defendant put his foot down four times and, thus, failed the test. Beezley then administered the walk and turn test. Defendant was asked to walk nine steps, heel to toe, along a straight line, and to turn and walk back in the same manner. Defendant leaned against a wall while Beezley gave him instructions for the test, took eight steps forward instead of the required nine, and staggered when he turned and, thus, failed the test. Defendant refused to take a breathalyzer test. Beezley read Defendant his Miranda rights and conducted an Alcohol Influence Report interview. Following this evaluation and Defendant's failure of the field sobriety tests, Beezley concluded that Defendant was intoxicated and that he had been driving under the influence of alcohol.

In his sole point on appeal, Defendant argues it was error for the trial court to overrule his motion for a judgment of acquittal because the State failed to produce evidence sufficient for a reasonable jury to find Defendant guilty beyond a reasonable doubt. Defendant's argument is without merit.

■■■ A law enforcement officer with proper qualifications and experience may testify as an expert witness as to intoxication. *State v. Teaster*, 962 S.W.2d 429, 431 (Mo.App. S.D.1998). "Whether a defendant is intoxicated may be proven by any witness who had a reasonable opportunity to observe him." *State v. Maggard*, 906 S.W.2d 845, 849 (Mo.App. S.D.1995). " 'Intoxication' is a 'physical condition' usually evidenced by unsteadiness on the feet, slurring of speech, lack of body coordination and an impairment of motor reflexes." *Teaster* at 431 (quoting *State v. Ruark*, 720 S.W.2d 453, 454 (Mo.App. S.D.1986)). In this case, two police officers trained to detect signs of intoxication testified they believed Defendant to be intoxicated on the evening in question. Both were able to smell alcohol on Defendant's breath, in one case from a distance of five to ten feet. Of the four objective methods of detecting intoxication utilized by Beezley and Cornell—the three field sobriety tests and a breathalyzer test—Defendant failed two and refused to submit to the other two. Alcohol was found in Defendant's vehicle, and he admitted he had consumed alcohol earlier in the evening. He was observed driving his vehicle in an erratic manner, crossing the center line of the road several times. He refused to respond to Cornell's emergency lights and, when he did stop, he staggered back to Cornell's patrol car. In sum, it is clear from the record before us that the State submitted ample evidence from which a reasonable jury could conclude Defendant was guilty of driving

while intoxicated. The jury was free to believe any or all of the State's evidence that Defendant drove his vehicle in an intoxicated state the evening of November 21, 2000. *State v. Shinn,* 921 S.W.2d 70, 73 (Mo.App. E.D.1996). They chose to do so. The judgment of the trial court is, therefore, affirmed.

MONTGOMERY, P.J., and BARNEY, J., concur.