STATE of Missouri, Plaintiff–
Respondent,

v.

Stephen T. SHIPP, Defendant–
Appellant.

No. 25530.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 14, 2004.

---

Ellen H. Flottman, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Leslie E. McNamara, Asst. Attorney General, Jefferson City, for respondent.

RAHMEYER, Chief Judge.

Stephen T. Shipp ("Appellant") was charged, by felony information, with assault in the second degree, § 565.060;[1] resisting arrest, § 575.150; and unlawful use of a weapon, § 571.030. At the conclusion of a jury trial, he was convicted on all counts and the trial court subsequently sentenced him as a prior offender to twelve years imprisonment. Following his conviction, Appellant filed a Motion for Judgement of Acquittal, which was denied by the trial court. Appellant then timely filed this appeal, in which he contends that the trial court erred in denying his Motion for Acquittal because there was insufficient evidence from which a reasonable jury could find him guilty beyond a reasonable doubt of the offenses of resisting arrest and second-degree assault.[2] We affirm.

▅▅▅ When determining whether a conviction is supported by sufficient evidence, our review is limited to whether there is substantial evidence from which a reasonable juror might conclude that the defendant is guilty beyond a reasonable doubt. *State v. Lawson,* 84 S.W.3d 170,

171 (Mo.App. S.D.2002). "Evidence favorable to the verdict is accepted as true, as are reasonable inferences therefrom, while contrary evidence and inferences are disregarded." *Id.* While we review the evidence in the light most favorable to the verdict, we do not give the State the benefit of unreasonable or speculative inferences. *State v. Whalen,* 49 S.W.3d 181, 184 (Mo. banc 2001). Additionally, the amount of credibility given to witnesses is an issue to be resolved by the jury, *State v. Mason,* 95 S.W.3d 206, 209 (Mo.App. S.D.2003), and the jury is also vested with discretion as to whether to believe all, part, or none of a witness' testimony. *State v. Goudeau,* 85 S.W.3d 126, 131 (Mo. App. S.D.2002). In evaluating a challenge to the sufficiency of the evidence, it is not our function to weigh the evidence, but instead to determine whether the jury had substantial evidence with which to support the verdict. *State v. Morris,* 41 S.W.3d 494, 497 (Mo.App. E.D.2000).

In the light most favorable to the verdict, the facts adduced at trial are as follows: On the evening of August 19, 1999, Appellant visited the residence of Larry Townbridge. While there, Appellant and Tracy May ("May") went into a barn where Appellant informed May that he had been having problems with his girlfriend, Rochelle Eagleson ("Eagleson"), and another man, Leland Whitaker ("Whitaker"). May felt there was something about Appellant "that wasn't right." While the two men were speaking, Appellant showed May a .22 caliber revolver that he had on his person. May took the revolver from Appellant and, while Appellant remained inside, he walked outside, unloaded the weapon, and then returned it to Appellant.

---

1. All references to statutes are to RSMo 2000, unless otherwise indicated.

2. Appellant does not contest his conviction for unlawful use of a weapon.

Appellant then left the Townbridge residence and drove to the K–Mark Bar in Anapolis, Missouri. Both Eagleson and Whitaker were at the K–Mark Bar that evening, as Eagleson was employed there as a bartender and Whitaker was there playing pool. When Appellant arrived at the bar, he turned his truck over in the driveway. He then went inside the bar and accused Whitaker of rolling his truck. When Whitaker denied having any involvement in the wrecking of Appellant's truck, Appellant grabbed him by the throat, pointed the revolver at his head, and pulled the trigger. Because the weapon was unloaded, it did not discharge, and a struggle between Appellant and Whitaker ensued.

While Appellant and Whitaker were struggling, Eagleson called the police, and Deputy Jim Oxendine ("Deputy Oxendine") arrived on the scene soon thereafter. Upon his arrival, Deputy Oxendine took the revolver away from the scuffling men and then stowed it behind the bar. He then returned to the fight in order to break it up and place Appellant under arrest. When Deputy Oxendine attempted to handcuff him, Appellant "pulled his hand away," fought against Deputy Oxendine, and "continued to struggle to get away." Eventually, Deputy Oxendine was able to handcuff Appellant and place him under arrest.

Appellant was subsequently charged with assault in the second degree, resisting arrest, and unlawful use of a weapon, and he was convicted on all counts following a jury trial. On appeal, Appellant challenges the trial court's denial of his Motion for Acquittal on the ground that his conviction for second-degree assault and resisting arrest were supported by insufficient evidence.

◼ In his first point on appeal, Appellant challenges the propriety of his conviction for resisting arrest on the ground that "the evidence was insufficient to prove beyond a reasonable doubt that appellant resisted his arrest by Deputy Oxendine by using or threatening to use physical force." In pertinent part, § 575.150.1 provides that:

A person commits the crime of resisting or interfering with arrest if, knowing that a law enforcement officer is making an arrest, or attempting to lawfully detain or stop an individual ..., or the person reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or lawfully stop an individual ..., for the purpose of preventing the officer from effecting the arrest, stop or detention, the person:

(1) Resists the arrest, stop or detention of such person by using or threatening the use of violence or physical force or by fleeing[3] from such officer[.]

Appellant argues that the evidence presented at trial by the State was insufficient to support a jury finding that Appellant either used or threatened to use violence or physical force against Deputy Oxendine.

Initially, we observe that § 575.150.1 does not define the term "physical force"; thus, we turn to case law for guidance in providing meaning to the term "physical force" in the context of resisting arrest.

3. By felony information, the State charged Appellant with resisting arrest "by using or threatening to use violence or physical force." Similarly, the pertinent verdict director asked the jury to determine whether Appellant "resisted by using physical force" in order to prevent Deputy Oxendine from arresting him. Thus, Appellant was never charged with resisting arrest by fleeing from Deputy Oxendine, and that issue is not currently before this court.

In *State v. Bickings*, 910 S.W.2d 370 (Mo. App. S.D.1995), for example, this court found the physical force necessary to support a conviction for resisting arrest when the appellant struggled with, shoved, and wrapped his legs around officers who were attempting to arrest him. *Id.* at 372. Similarly, the court in *State v. Reynolds*, 723 S.W.2d 400 (Mo.App. W.D.1986) also found that the appellant's actions constituted sufficient physical force to support his conviction for resisting arrest. *Id.* at 404. There, the appellant pulled his arm away from a police officer who was attempting to arrest him, and when the officer subsequently instructed him to place his hands on the wall, he "yanked" his arm away and, in the process, inadvertently struck the officer in the face. *Id.*

While the facts in neither *Bickings* nor *Reynolds* squarely match the facts in the case at hand, they nonetheless persuade us that the evidence presented at trial indicates that Appellant used "physical force" as contemplated by § 575.150.1. At trial, Deputy Oxendine testified that when he attempted to place Appellant in handcuffs, Appellant "pulled his hand away," fought against him, and "continued to struggle to get away." Furthermore, Eagleson testified that while Deputy Oxendine was attempting to handcuff Appellant, Appellant was "fighting against him."

Thus, in light of the evidence presented by the State at trial, we find that there was sufficient evidence from which a reasonable jury could find Appellant guilty of resisting arrest beyond a reasonable doubt. Point I is denied.

In his second point on appeal, Appellant challenges the sufficiency of the evidence supporting his conviction for assault in the second degree. By felony information, the State alleged that Appellant "attempted to cause physical injury to [Whitaker] by means of a deadly weapon," in violation of § 565.060.1(2). Appellant argues that because the State claimed that he attempted to cause physical injury to Whitaker by means of the revolver, it was incumbent upon the State to prove that he believed that the revolver was loaded—and capable of injuring Whitaker—when he pointed it at Whitaker's head and pulled the trigger. Appellant contends that the evidence presented at trial was insufficient to prove that he believed the revolver to be loaded; ergo, it was likewise insufficient to prove that he was guilty of second-degree assault by attempting to cause physical injury to Whitaker.

■ At trial, the State offered testimony from May, Whitaker, and Eagleson in support of its charge that Appellant was guilty of committing assault in the second degree. May testified that, before Appellant went to the K–Mark Bar on the evening of August 19, 1999, he was very upset and brandished a loaded revolver while informing May that he had been having trouble with his then-girlfriend, Eagleson, and Whitaker. May further testified that after seeing the loaded weapon and Appellant's condition, he took the revolver from Appellant and returned it only after first emptying it. Both Whitaker and Eagleson testified that Appellant arrived at the K–Mark Bar later that evening, verbally accosted Whitaker, and then aimed the revolver at Whitaker's head and pulled the trigger. Special Agent David Diveley, from the Bureau of Alcohol, Tobacco and Firearms, also testified that he tested the revolver after it was recovered from Appellant and found it to be fully functional. In light of this testimony, it was reasonable for the jury to conclude that Appellant was unaware that the revolver was unloaded when he attempted to fire it at Whitaker, and that Whitaker escaped physical injury, and possibly death, only by virtue of May's earlier foresight.

In support of his argument that there was insufficient evidence with which to convict him of assault, Appellant cites May's testimony at trial that, sometime after the K–Mark Bar incident had occurred, Appellant informed May that he had seen May empty the revolver on the evening of August 19 and, thus, he knew that the weapon was unloaded when he attempted to fire it at Whitaker later that evening. Thus, Appellant argues, in light of this testimony offered by May, the State presented insufficient evidence at trial to sustain a conviction for assault in the second degree. The jury, however, which is given considerable discretion as to whether a witness' testimony is to believed, was apparently not persuaded by this portion of May's testimony. *See Mason*, 95 S.W.3d at 209; *Goudeau*, 85 S.W.3d at 131. Because May's testimony on this point stands in opposition to the jury verdict, we are similarly precluded from accepting this testimony pursuant to our standard of review. *Lawson*, 84 S.W.3d at 171. We thus find that there was sufficient evidence from which a reasonable jury could find Appellant guilty of assault in the second degree. Point II is denied.

The trial court did not err in denying Appellant's Motion for Acquittal, and its judgment is therefore affirmed.

PARRISH, J., and SHRUM, J., concur.